

October 22, 2021

**VIA FOIA STAR**

U.S. Department of Justice
Office of Information Policy
Sixth Floor, 441 G Street, NW
Washington, D.C. 20530

**Re: Appeal and Notice of Intent to Sue, FOIA-2021-02103**

Dear Sir/Madam:

America First Legal Foundation ("AFL") is a national, nonprofit organization working to promote the rule of law in the United States, prevent executive overreach, ensure due process and equal protection for all Americans, all to promote public knowledge and understanding of the law and individual rights guaranteed under the Constitution and laws of the United States. AFL's mission includes promoting government transparency and accountability by gathering official information, analyzing it, and disseminating it through reports, press releases, and/or other media, including social media platforms, to educate the public. Holding government officials accountable for faithfully executing our laws and protecting our citizens are among our core concerns.

AFL is "primarily engaged in disseminating information" for the purposes of 5 U.S.C. § 552(a)(6)(E). We distribute our work widely, posting government records for the benefit of the public, Congress, policymakers, and scholars; and creating and disseminating distinct work on media outlets of all sorts through the exercise of our editorial skills. We intend to disseminate information and analysis about this request—and any information obtained in response—on our website and social media outlets. Our email list contains over 65,000 unique email addresses, our Twitter page has nearly 10,000 followers, the Twitter page of our Founder and President has over 83,800 followers, and we have another 18,000 followers on GETTR. Courts have found

other organizations engaged in similar activities "easily" satisfy the legal standard with less than half the followers and subscribers AFL currently has.[1]

## I.   Background

On August 31, 2021, AFL submitted FOIA-2021-02103 to the Department of Justice (DOJ) Office of Information Policy (OIP) to obtain records related to the Biden Administration's evacuation and vetting of Afghan nationals in the aftermath of its failed Afghanistan retreat. *See* Exhibit 1. Expedited processing was requested for Items A and B thereof. Item A requested:

> All records that mention or reference screening or vetting individuals being evacuated from Kabul and/or Afghanistan in the possession of the following custodians:
>
> 1) Attorney General Merrick B. Garland
> 2) Deputy Attorney General Lisa O Monaco
> 3) DOJ Chief of Staff (sic)
> 4) Assistant Attorney General for National Security Division
> 5) Deputy Assistant Attorney General for Counterterrorism in NSD
> 6) NSD Chief of Staff

The timeframe for this request is August 12, 2021, to August 31, 2021.

Item B requested:

> All records related to DOJ providing any other government partner any information on the identity of any person who boarded a U.S. operated aircraft leaving Afghanistan between August 10, 2021, and August 31, 2021.

OIP denied expedition on September 10, 2021. *See* Exhibit 2.

---

[1] *Protect Democracy Project, Inc., v, United States Dep't of Justice,* 498 F. Supp. 3d 132. 139-40 (D.D.C. 2020); *see also Brennan Center for Justice at NYU School of Law v. Department of Commerce,* 498 F. Supp. 3d 87, 98 (D.D.C. 2020); *accord Cause of Action v. FTC,* 799 F.3d 1108, 1125-26 (D.C. Cir. 2015). *Brennan Center* is instructive and suggestive:

> The Brennan Center asserts that it is primarily engaged in dissemination of information as 'a non-partisan law and public policy' group that 'regularly writ[es], publish[es], and disseminat[es] information' and maintains an online library of thousands of articles, including over forty articles about the census. Defendants do not dispute the Brennan Center's status as an organization "primarily engaged in disseminating information," and other courts have found that similar organizations meet this standard.

*Brennan Center,* 498 F. Supp.3d at 98 (citations omitted). The FOIA sets one standard for all requestors. Treating AFL differently than others similarly situated, whether at the direction of individual political officials in OAG or OPA or otherwise violates AFL's due process rights.

FOIA-2021-02103 documented AFL's compelling need for expedited processing of Items A and B pertaining to the admission and vetting of Afghan and other foreign nationals into the United States. It adequately articulated the urgency for immediate disclosure of records pertaining to the measures being taken, or not being taken, to verify identities, to vet for terror ties, and to protect American citizens here at home.[2] Nearly identical requests were filed with several other Cabinet agencies involved in the Afghanistan withdrawal. All, save for DOJ, granted expedited processing. *See* Exhibit 3 (Department of Defense); Exhibit 4 (Department of Homeland Security); and Exhibit 5 (Department of State).

Accordingly, AFL timely appeals OIP's denial of expedited processing.[3]

## II.    OIP Should Grant Expedited Processing

OIP denied expedition on two apparently independent grounds. First:

> Based on the information you have provided, I have determined that your request for expedited processing under this standard should be denied. This Office cannot identify a particular urgency to inform the public about an actual or alleged federal government activity beyond the public's right to know about government activities generally.

Exhibit 2 at 1. Second:

---

[2] Exhibit 1 at 6 – 7 (citations omitted). *See also* 5 U.S.C. § 552(a)(6)(E); 28 C.F.R. § 116.5(e); *Protect Democracy Project, Inc. v. DOD*, 263 F. Supp. 3d 293, 300 (D.D.C. 2017). These are not hypothetical concerns. *See See* U.S. Dep't of Justice (W.D. Wis.), *Grand Jury Returns Indictments Charging 2 Afghan Evacuees with [Sex] Crimes While at Fort McCoy & Wisconsin Residents with Gun & Drug Crimes* (Sept. 22, 2021) ("Bahrullah Noori, 20, is charged with attempting to engage in a sexual act with a minor using force against that person, and with three counts of engaging in a sexual act with a minor, with one count alleging the use of force. The indictment alleges that that the victims had not attained the age of 16 years and were at least four years younger than the defendant. Mohammad Haroon Imaad, 32, is charged with assaulting his spouse by strangling and suffocating her.") https://www.justice.gov/usao-wdwi/pr/grand-jury-returns-indictments-charging-afghan-evacuees-crimes-while-fort-mccoy; U.S. Dep't of Justice (W.D. Pa.), *Syrian Man Indicted on Terrorism Charges After Planning Attack on Christian Church, Indictment Alleges Mustafa Alowemer Plotted Attacks in the Name of ISIS* (July 18, 2021) https://www.justice.gov/usao-wdpa/pr/syrian-man-indicted-terrorism-charges-after-planning-attack-christian-church; Dillon Burroughs, *Congresswoman Reveals Disturbing Thing She Found When Visiting Camp for Afghan Refugees in US*, THE WESTERN JOURNAL (Oct. 20, 2021) https://www.westernjournal.com/congresswoman-reveals-disturbing-thing-found-visiting-camp-afghan-refugees-us/; Nick Miroff, *U.S. has flagged 44 Afghan evacuees as potential national security risks over the past two weeks, vetting reports show*, THE WASHINGTON POST (Sept. 10, 2021) https://www.washingtonpost.com/national/afghan-refugees-security-risks/2021/09/09/a0c5d1ac-1194-11ec-a511-cb913c7e5ba0_story.html

[3] The FOIA sets one standard for all federal agencies. Accordingly, it should be applied the same way by all federal agencies. Inconsistent and contradictory processing determinations, especially on a matter of such political sensitivity and public interest as Afghan vetting, raise obvious policy and practice due process concerns. *See Citizens for Resp. & Ethics in Washington v. U.S. Dep't of Hous. & Urb. Dev.*, 415 F. Supp. 3d 215, 225 (D.D.C. 2019).

> You have also indicated that you are seeking expedited processing of your request pursuant to the Department's standards permitting expedition for requests based on circumstances in which the lack of expedited treatment could reasonably be expected to pose an imminent threat to the life or physical safety of an individual (See id. § 16.5(d)(i)) and involving "[a] matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence" (See Id. (sic) § 16.5(d)(iv)). In neither instance have you provided a statement explaining in detail the basis for your request to receive expedited processing under these standards.

Id. As explained below, neither ground is sufficient and expedited processing should have been granted.

A.   *Items A And B Meet The "Urgency" Test.*

The FOIA mandates expedited processing when a requestor demonstrates "compelling need." 5 U.S.C. § 552(a)(6)(E)(i)(II). "Compelling need," in relevant part, means an "urgency to inform the public concerning actual or alleged Federal Government activity." 5 U.S.C. § 552(a)(6)(E)(v). The common public meaning of "urgency" at the time of § 552(a)(6)(E)(v)(II)'s enactment was "the quality or state of being urgent." The common public meaning of "urgent", in turn, was "requiring or compelling speedy action or attention."[4] As explained in FOIA-2021-02103, the Biden Administration's extraordinarily incompetent retreat from Afghanistan and its chaotic failure to disclose how it decided whom to admit and whom to exclude from the United States were at the time of the request and remain to this day matters compelling speedy action or attention.[5]

Alternatively, the Circuit test for expedited processing requires the department to weigh three main factors: (1) whether the request concerns a matter of current exigency to the American public; (2) whether the consequences of delaying a response would compromise a significant recognized interest; and (3) whether the request concerns federal government activity.[6] AFL meets this test as well.

Respecting factor one, as noted above, the vetting of Afghans admitted into the United States is assuredly a matter of public concern and media interest, and central to pressing issues of the day. The public must know why these Afghans, most of whom are apparently ineligible for a Special Immigrant Visa (given to eligible Afghan translators and interpreters who worked directly with the U.S. Armed Forces or

---

[4] The FOIA must be interpreted in accord with the ordinary public meaning of its terms at the time of enactment. *Bostock v. Clayton Cty., Georgia*, 140 S. Ct. 1731, 1738 (2020).

[5] *See* Exhibit 1 at 6 n. 5, 6, and 7 n. 7, 9.

[6] *Al-Fayed v. Central Intelligence Agency*, 254 F.3d 300, 309-10 (D.C. Cir. 2001).

under Chief of Mission (COM) authority at U.S. Embassy Baghdad or U.S. Embassy Kabul, and not others who worked for the United States), were admitted to our country; and why it is so many U.S. citizens, green card holders, and Afghan allies remain under Taliban control and at risk. [7]

Respecting factor two, if production is delayed, then both AFL and the public at large will be precluded from obtaining in a timely fashion information vital to the current and ongoing debate surrounding refugee vetting. Being closed off from the opportunity to debate the Biden Administration's conduct here is a serious harm in an open democracy. [8] Disclosing relevant records months or years from now will be of academic interest only, for any damage will have been done and stale information is of little value. [9]

Respecting factor three, Items A and B involve "federal government activity."

> **B.** *Items A And B Meet The 28 C.F.R. §16.5(e)(1) Test.*

Section 16(e)(1)(i) provides "Requests and appeals shall be processed on an expedited basis whenever it is determined that they involve: (i) Circumstances in which the lack of expedited processing could reasonably be expected to pose an imminent threat to the life or physical safety of an individual". AFL cannot identify "an individual" who can reasonably be expected to suffer imminent threat to life or physical safety if expedited processing is denied. Therefore, AFL withdraws its request for expedited processing under this subsection.

Section 16(e)(1)(iv) provides "Requests and appeals shall be processed on an expedited basis whenever it is determined that they involve .... (iv) A matter of widespread and exceptional media interest in which there exist possible questions about the

---

[7] *Compare Payne Enters. v. United States*, 837 F.2d 486, 494 (D.C. Cir. 1988); *Am. Oversight v. U.S. Dep't of State*, 414 F. Supp. 3d 182, 186 (D.D.C. 2019); *Elec. Privacy Info. Ctr. v. U.S. Dep't of Justice*, 416 F. Supp. 2d 30, 40-41 (D.D.C. 2006).

[8] *Protect Democracy Project, Inc. v. U.S. Dep't of Def.*, 263 F. Supp. 3d 293, 299-300 (D.D.C. 2017). The court reasoned:

> But do the requests touch on 'a matter of current exigency to the American public,' and would 'delaying a response…compromise a significant recognized interest,' *Al–Fayed*, 254 F.3d at 310? Likely, the answer to both questions is yes. Regarding nationwide 'exigency': In its requests, submitted the day after the April 6 missile strikes against Syria, Protect Democracy explained that 'the President's decision to initiate military action is of the utmost importance to the public,' and that 'whether the President has the legal authority to launch [such] a military strike' is similarly critical. Few would take issue with these assertions. But as evidence that they were justified, one need look no further than the widespread media attention—including by some of the nation's most prominent news outlets—paid both to the April 6 strike and its legality, as early as the date of Protect Democracy's requests.

*Id.* at 299. If the one or two news cycles worth of attention given to one missile strike is sufficient then Afghan vetting should qualify as well.

[9] *Payne* 837 F.2d at 494.

government's integrity that affect public confidence." As a threshold matter, AFL notes that in denying AFL expedited processing for its request FOIA-2022-00056, both OIP and the Office of Legal Counsel said "the Director of the Office of Public Affairs …. determines whether a request pertains to '[a] matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity that affect public confidence.' 28 C.F.R § 16.5(e)(1)(iv); *see id.* § 16.5(e)(2)." It is not clear whether the Director of the Office of Public Affairs has made a similarly erroneous determination with respect to FOIA-2021-02103. It would not be surprising if he did, because the Biden Administration's chaotic Afghan vetting has been a major embarrassment with significant adverse political consequences for the Biden White House and the Democrat party.[10]

Regardless, on the record before OIP, and under applicable and controlling authorities, expedited processing should be granted.[11] As first documented, Afghan vetting is a matter of widespread and exceptional media interest in which there exist possible questions about the Biden Administration's integrity that affect public confidence. AFL need not prove government wrongdoing to obtain records on an expedited basis. Rather, FOIA-2021-02103, fairly read, must simply provide grounds to support the contention that the matter is time sensitive, and that it concerns a "matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity that affect public confidence."[12]

OIP contends AFL failed to explain "in detail" the basis for its request to receive expedited processing 28 C.F.R. § 16.5(e)(1)(iv). But FOIA-2021-02103 established both time sensitivity and the fact that Afghan vetting was a matter of widespread and exceptional medial interest affecting public confidence in the government's integrity.[13] This story is currently unfolding; disclosure of the requested records should yield information bearing directly on the critical questions of what the government knew about the Afghans it is bringing or hosting and resettling into the United States, when it knew it, and whether it is now being truthful with the public

---

[10] *Letter from the Hon. Yvette Herrell, et al, to the Hon. Joseph R. Biden* (Sept. 8, 2021) https://herrell.house.gov/sites/evo-subsites/herrell.house.gov/files/evo-media-document/Afghan%20Vetting%20Letter.pdf; Dan Balz et al., *Americans Support Afghanistan Pullout—But Not the Way it Was Done, a Post-ABC Poll Finds,* WASHINGTON POST (Sept. 3, 2021), https://www.washingtonpost.com/politics/post-abc-poll-biden-afghanistan/2021/09/02/5520cd3e-0c16-11ec-9781-07796ffb56fe_story.html ("The Afghanistan withdrawal has contributed to a drop in Biden's overall approval rating, which for the first time in his presidency is net negative. The poll finds 44 percent saying they approve of how he is handling his job, while 51 percent disapprove"); Domenico Montanaro, *Biden's Approval Rating Hits a New Low After the Afghanistan Withdrawal,* NPR (Sept. 2, 2021), https://www.npr.org/2021/09/02/1033433959/biden-approval-rating-afghanistan-withdrawal. *See generally, Citizens for Responsibility,* 415 F. Supp. 3d at 225.
[11] *Am. C.L. Union v. U.S. Dep't of Justice,* 321 F. Supp. 2d 24, 31 (D.D.C. 2004) (citations omitted); *Brennan Center,* 498 F. Supp. 3d at 98–99; *Citizens for Responsibility,* 436 F. Supp. 3d at 360-61.
[12] *Citizens for Responsibility,* 436 F. Supp. 3d at 361.
[13] Exhibit 1 at 6-7.

about past circumstances and present or future risks. Public confidence in law enforcement is of paramount importance. Expedition is therefore appropriate.[14]

### III.   Conclusion

Please contact the undersigned at [FOIA@aflegal.org](mailto:FOIA@aflegal.org) if you require additional clarification or information.

/S/ REED D. RUBINSTEIN
Reed D. Rubinstein
America First Legal Foundation

---

[14] *Am. C.L. Union,* 321 F. Supp. 2d at 30.

# EXHIBIT 1



August 31, 2021

**Via FOIA STAR**

Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530

**Freedom of Information Act Request: Evacuations from Afghanistan.**

Dear FOIA Officer:

America First Legal Foundation ("AFL") is a national, nonprofit organization. AFL works to promote the rule of law in the United States, prevent executive overreach, ensure due process and equal protection for all Americans, and promote knowledge and understanding of the law and individual rights guaranteed under the Constitution and laws of the United States.

## I.   Introduction

For months, the Biden Administration assured Americans it had matters well in hand in Afghanistan, and that the terrorists were not about to take over. For example, at President Biden's July 8, 2021, press conference, he said:

> Q.  Is a Taliban takeover of Afghanistan now inevitable?
>
> THE PRESIDENT: No, it is not.
>
> Q.  Why?
>
> THE PRESIDENT: Because you — the Afghan troops have 300,000 well-equipped — as well-equipped as any army in the world — and an air force against something like 75,000 Taliban. It is not inevitable.
>
> * * * *
>
> Q.  Mr. President, thank you very much. Your own intelligence community has assessed that the Afghan government will likely collapse.

THE PRESIDENT: That is not true. [1]

These assurances were false.[2]

The Taliban is now in control, and the United States has completely withdrawn its military and diplomatic presence from Afghanistan. The Biden government claims to have evacuated over 120,000 individuals from Afghanistan, but its planning has been inept, its execution chaotic, and its reporting and transparency lacking in detail. It has withheld critical facts, including, among other things, the number of American citizens still in Afghanistan, the nationalities of all those evacuated, the locations of all non-citizens granted admission to the United States, the immigration status—or lack thereof—of all non-citizens, and the process, procedures, and criteria used for vetting and screening evacuees for security and other risks.

AFL's mission includes promoting government transparency and accountability by gathering official information, analyzing it, and disseminating it through reports, press releases, and/or other media, including social media platforms, to educate the public. At the core of this mission is keeping government officials accountable for their duty to faithfully execute the laws and protect and defend the Constitution and laws of the United States and to inform the public as to who the government is allowing entry to the country unscreened. Therefore, under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, AFL hereby requests the following records within twenty business days.

## II.   Definitions

"U.S. Citizen" means a natural born or naturalized citizen of the United States of America.

"INL Air Wing" means Bureau of International Narcotics and Law Enforcement Affairs Office of Aviation, its employees, contractors, vehicles, and aircraft, all as more particularly described at https://www.state.gov/aviation-support/

---

[1] The White House, *Remarks by President Biden on the Drawdown of U.S. Forces in Afghanistan* (July 8, 2021) https://www.whitehouse.gov/briefing-room/speeches-remarks/2021/07/08/remarks-by-president-biden-on-the-drawdown-of-u-s-forces-in-afghanistan/.

[2] The evidence is the Biden Administration knew, or should have known, these assurances were false at the time they were made. *See, e.g.*, Dep't of Defense, *Lead Inspector General, Quarterly Report to the U.S. Congress on Operation Freedom's Sentinel (OFS), April 1, 2021 – June 30, 2021* at 3, 18, 22-25 (Aug. 17, 2021) https://media.defense.gov/2021/Aug/17/2002832926/-1/-1/1/LEAD%20INSPEC-TOR%20GENERAL%20FOR%20OPERATION%20FREEDOM%E2%80%99S%20SENTI-NEL%20I%20QUARTERLY%20REPORT%20TO%20THE%20UNITED%20STATES%20CON-GRESS%20I%20APRIL%201,%202021%20-%20JUNE%2030,%202021.PDF; Joseph Clark, *Biden Administration Ignored Warnings on Afghanistan, Leaked State Dept. Cable Shows*, THE WASHINGTON TIMES (Aug. 21, 2021), https://www.washingtontimes.com/news/2021/aug/20/state-department-cable-shows-biden-administration-/;.

"National Vetting Center" means the Center created pursuant to National Security Presidential Memorandum (NSPM)-9, *Optimizing the Use of Federal Government Information in the Support of the National Vetting Enterprise* and more particularly described at https://www.cbp.gov/border-security/ports-entry/national-vetting-center

"Non-U.S. person" means an alien as defined by 8 U.S.C. § 1101(a)(3).

"Parole authority" means the authority granted under 8 U.S.C. § 1182(d)(5).

"Refugee" has the meaning assigned to it by 8 U.S.C. § 1101(a)(42).

"Special Immigrant Visa" means Special Immigrant Visas for Iraqi and Afghan Translators/Interpreters as defined by Public Law 109-163, and subsequent amendments, and as detailed on the State Department's website at https://travel.state.gov/content/travel/en/us-visas/immigrate/siv-iraqi-afghan-translators-interpreters.html#references.

## III.   Requested Records

A) All records that mention or reference screening or vetting individuals being evacuated from Kabul and/or Afghanistan in the possession of the following custodians:

   1) Attorney General Merrick B. Garland
   2) Deputy Attorney General Lisa O Monaco
   3) DOJ Chief of Staff
   4) Assistant Attorney General for National Security Division
   5) Deputy Assistant Attorney General for Counterterrorism in NSD
   6) NSD Chief of Staff

The timeframe for this request is August 12, 2021, to August 31, 2021.

B) All records related to DOJ providing any other government partner any information on the identity of any person who boarded a U.S. operated aircraft leaving Afghanistan between August 10, 2021, and August 31, 2021.

C) All documents that mention or reference refugee or SIV screening or processing for individuals seeking evacuation or resettlement out of Kabul, Afghanistan, or KBL. The time frame for this request is July 1, 2021, to the date the records request is processed.

D) All records that mention or reference coordination with the Department of Defense, the Department of State, or the Department of Homeland Security to

screen or vet any individual seeking evacuation from Afghanistan and/or admission into the United States. The time frame for this request is July 1, 2021, to the date the records request is processed.

E) All records regarding either 1) inquiries from the interagency or 2) information provided to an interagency partner about people seeking admission to the United States, or onto a United States operated aircraft out of Afghanistan.

F) All records of derogatory information provided to the Department of State on individuals evacuated from Afghanistan between August 16, 2021, and August 31, 2021.

## IV.   Redactions

Redactions are disfavored as the FOIA's exemptions are exclusive and must be narrowly construed. *Am. Immigration Lawyers Ass 'n v. Exec. Office for Immigration Review (AILA)*, 830 F.3d 667, 676-79 (D.C. Cir. 2016). If a record contains information responsive to a FOIA request, then Department of State must disclose the entire record; a single record cannot be split into responsive and non-responsive bits. *Id.; see also Parker v. United States DOJ*, 278 F. Supp. 3d 446, 451 (D.D.C. 2017). Consequently, Department of State should produce email attachments.

In connection with this request, and to comply with your legal obligations:

- Please search all locations and systems likely to have responsive records, regardless of format, medium, or physical characteristics.

- In conducting your search, please construe the term "record" in the broadest possible sense, to include any written, typed, recorded, graphic, printed, or audio material of any kind. We seek all records, including electronic records, audiotapes, videotapes, and photographs, as well as texts, letters, emails, facsimiles, telephone messages, voice mail messages, and transcripts, notes, or minutes of any meetings, telephone conversations, or discussions.

- Our request includes any attachments to those records or other materials enclosed with a record when transmitted. If an email is responsive to our request, then our request includes all prior messages sent or received in that email chain, as well as any attachments.

- Please search all relevant records or systems containing records regarding agency business. Do not exclude records regarding agency business contained in files, email accounts, or devices in the personal custody of your officials, such as personal email accounts or text messages. Records of official business conducted using unofficial systems or stored outside of official files are subject to

the Federal Records Act and FOIA. It is not adequate to rely on policies and procedures that require officials to move such information to official systems within a certain period of time; AFL has a right to records contained in those files even if material has not yet been moved to official systems or if officials have, by intent or through negligence, failed to meet their obligations.

- Please use all tools available to your agency to conduct a complete and efficient search for potentially responsive records. Agencies are subject to govern-mentwide requirements to manage agency information electronically, and many agencies have adopted the National Archives and Records Administration ("NARA") Capstone program, or similar policies. These systems provide options for searching emails and other electronic records in a manner that is reasonably likely to be more complete than just searching individual custodian files. For example, a custodian may have deleted a responsive email from his or her email program, but your agency's archiving tools may capture that email under Capstone. At the same time, custodian searches are still necessary; you may not have direct access to files stored in .PST files, outside of network drives, in paper format, or in personal email accounts.

- If some portions of the requested records are properly exempt from disclosure, please disclose any reasonably segregable non-exempt portions of the re-quested records. If a request is denied in whole, please state specifically why it is not reasonable to segregate portions of the record for release.

- Please take appropriate steps to ensure that records responsive to this request are not deleted by the agency before the completion of processing for this re-quest. If records potentially responsive to this request are likely to be located on systems where they are subject to potential deletion, including on a sched-uled basis, please take steps to prevent that deletion, including, as appropriate, by instituting a litigation hold on those records.

## V.    Fee Waiver Request

Per 5 U.S.C. § 552(a)(4)(A)(iii) and 28 C.F.R. § 16.10, AFL requests a waiver of all search and duplication fees associated with this request.

First, AFL is a qualified non-commercial public education and news media requester. AFL is a new organization, but it has already demonstrated its commitment to the public disclosure of documents and creation of editorial content through regular sub-stantive analyses posted to its website. For example, its officials routinely appear on national television and use social media platforms to disseminate the information it has obtained about federal government activities. In this case, AFL will make your records and your responses publicly available for the benefit of citizens, scholars, and others. The public's understanding of your policies and practices will be enhanced

5

through AFL's analysis and publication of the requested records. As a nonprofit organization, AFL does not have a commercial purpose and the release of the information requested is not in AFL's financial interest. Other agencies, including the Departments of Education, Energy, Interior, and Homeland Security, and the Office of the Director of National Intelligence have previously granted AFL a fee waiver.

Second, waiver is proper as disclosure of the requested information is "in the public interest because it is likely to contribute significantly to public understanding of operations or activities of the government." The sudden and abrupt withdraw of forces from a country where the United States has maintained a presence for nearly 20 years, the rapid collapse of the local government to an international terrorist organization in the matter of days, and the Biden Administration's inept response has made this an issue of intense public interest.

## VI.   Request for Expedited Processing

AFL seeks expedited processing of requests A and B.

Your regulations provide that you will grant expedited processing requests that demonstrate a "compelling need."[3] You define "compelling need" as existing, *inter alia*, if the information is urgently needed by an individual primarily engaged in disseminating information in order to inform the public concerning actual or alleged Federal government activity."[4] As demonstrated above, both criteria are met here.

First, AFL is an organization primarily engaged in disseminating information to the public. We intend to disseminate the information we receive and our analysis about this request to the public and to other members of the press.

Second, the Biden Administration claims more than 123,000 people, including about 6,000 American citizens, have been evacuated from Afghanistan.[5] However, the evacuation has been chaotic, poorly planned, and badly executed.[6] The Biden Administration turned over Kabul to the Taliban, giving it operational control over access to the

---

[3] 28 C.F.R. § 16.5(e).

[4] *Id.*

[5] *Transcript of Statement of Anthony Blinken on Afghanistan*, THE NEW YORK TIMES (Aug. 30, 2021) https://www.nytimes.com/2021/08/31/us/politics/blinken-afghanistan-speech.html

[6] Molly Hennessy-Fiske, *Americans Faced Taliban, Airport Chaos in Scramble to Evacuate Afghanistan*, LOS ANGELES TIMES (Aug 18, 2021), https://www.latimes.com/world-nation/story/2021-08-18/american-c-struggle-to-leave-afghanistan; Lauren Leatherby, Jim Huylebroek, Scott Reinhard & Sarah KerrAug, *The Dangerous Road to the Kabul Airport*, THE NEW YORK TIMES (Aug. 18, 2021), https://www.nytimes.com/interactive/2021/08/18/world/asia/kabul-airport-afghanistan-maps.html ("While American forces have taken control of Kabul's airport, chaos dominates just outside. As thousands desperately try to flee Afghanistan, Taliban fighters have blocked entrances, fired rifles and beaten some people in the crowds.").

Kabul airport and lists of U.S. Citizens and Afghan human assets.[7] Generally speaking, only individuals the Taliban allowed to leave Afghanistan were able to do so.

Yet the Biden government has not transparently disclosed the vetting and screening process used to ensure evacuees do not pose a security risk. The lack of transparency is problematic first because this Administration has repeatedly disregarded U.S. immigration laws,[8] and second because it has, over a period of months, repeatedly misrepresented the facts on the ground. The Biden credibility gap is wide and deep with respect to Afghanistan, immigration enforcement, and respect for the rule of law. Accordingly, there is an urgent need for immediate disclosure of the measures being taken to verify identities, to vet for terror ties, and to protect American Citizens here at home.[9]

Finally, there is a high likelihood that the information AFL seeks in the above-specified requests will be rendered stale once foreign nationals are granted admission to the United States. Given that the processing of many tens of thousands foreign nationals for admission to the United States is apparently still in process, the requested records are needed urgently to inform the public and policy makers about the processes and criteria this Administration is using to screen and vet potential security risks, and to ensure applicable laws and regulations are being followed.

## VI.    Production

To accelerate release of responsive records, AFL welcomes production on an agreed rolling basis. If possible, please provide responsive records in an electronic format by email. Alternatively, records in native format or in PDF format on a USB drive.

---

[7] Aaron Blake, *The Biden administration's increasingly muddy denials on giving the Taliban lists*, THE WASHINGTON POST (Aug. 30, 2021) https://www.msn.com/en-us/news/us/the-biden-administration-e2-80-99s-increasingly-muddy-denials-on-giving-the-taliban-lists/ar-AANU3cH?ocid=uxbndlbing;   Jerry Dunleavy, *White House: Taliban Setting Up More Entry Points Beyond Perimeter to Stop ISIS-K Attacks,* THE WASHINGTON EXAMINER (Aug. 23, 2021) https://news.yahoo.com/white-house-taliban-setting-more-17060 0073.html; *Taliban Captured Key US Military Biometric Devices: Report*, The Times of India (Aug. 19, 2021), https://timesofindia.indiatimes.com/world/us/taliban-captured-key-us-military-biometric-devices-report/articleshow/85445501.cms.

[8] America First Legal Foundation, *AFL Files FOIAs Demanding Answers about the Biden Administration's Implementation of Catch-and-Release and Other Open Border Policies* (July 27, 2021), https://www.aflegal.org/news/afl-files-foias-demanding-answers-about-the-biden-administrations-implementation-of-catch-and-release-and-other-open-border-policies

[9] According to CNN, "The approach from the administration has been 'get as many people on the plane as you can, and we'll sort out the (immigration visa) stuff later'". Geneva Sands and Evan Perez, *Arriving Afghans Without Paperwork Prompt Delays and Security Challenges*, CNN (Aug. 21, 2021), https://www.cnn.com/2021/08/25/politics/arriving-afghans-paperwork-delays-security/index.html. *Compare* Lizzie Dearden, *Paris Attacks: Some Jihadists 'Took Advantage of Refugee Crisis to Slip into Europe', French Prime Minister Says,* The Independent (Nov. 20, 2015), https://www.independent.co.uk/news/world/europe/paris-attacks-some-jihadists-took-advantage-refugee-crisis-slip-europe-french-prime-minister-says-a6741466.html.

Please send any responsive records being transmitted by mail to America First Legal Foundation, 600 14th Street NW, 5th Floor, Washington, D.C. 20005.

## VII.   Conclusion

If you have any questions about how to construe this request for records or believe further discussions regarding search and processing would facilitate a more efficient production of records of interest to AFL, please do not hesitate to contact me at FOIA@aflegal.org. Finally, if AFL's request for a fee waiver is not granted in full, please contact us immediately upon making that determination.


                    Thank you,


                    /s/ Reed D. Rubinstein
                    Reed D. Rubinstein
                    America First Legal Foundation

# EXHIBIT 2



**U.S. Department of Justice**
Office of Information Policy
*Sixth Floor*
*441 G Street, NW*
*Washington, DC 20530-0001*

*Telephone: (202) 514-3642*

September 10, 2021

Reed Rubinstein                                    Re:    FOIA-2021-02103
foia@aflegal.org                                          DRH:GMG

Dear Reed Rubinstein:

This is to acknowledge receipt of your Freedom of Information Act (FOIA) request dated and received in this Office on August 31, 2021, in which you requested records concerning the vetting of individuals being evacuated from Afghanistan since July 1, 2021.

You have requested expedited processing of your request pursuant to the Department's standard permitting expedition for requests based on circumstances in which the lack of expedited treatment could reasonably be expected to pose an imminent threat to the life or physical safety of an individual. See 28 C.F.R. § 16.5(e)(1)(i) (2018). Based on the information you have provided, I have determined that your request for expedited processing under this standard should be denied.  Your letter fails to explain how access to the requested records would alleviate a specific threat to the life or physical safety of an individual.

Additionally, you have requested expedited processing of your request pursuant to the Department's standard permitting expedition for requests involving "[a]n urgency to inform the public about an actual or alleged federal government activity, if made by a person primarily engaged in disseminating information." See 28 C.F.R. § 16.5(e)(1)(ii) (2018).  Based on the information you have provided, I have determined that your request for expedited processing under this standard should be denied.  This Office cannot identify a particular urgency to inform the public about an actual or alleged federal government activity beyond the public's right to know about government activities generally.

You have also indicated that you are seeking expedited processing of your request pursuant to the Department's standards permitting expedition for requests based on circumstances in which the lack of expedited treatment could reasonably be expected to pose an imminent threat to the life or physical safety of an individual (See id. § 16.5(d)(i)) and involving "[a] matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence" (See Id. § 16.5(d)(iv)).  In neither instance have you provided a statement explaining in detail the basis for your request to receive expedited processing under these standards.

To the extent that your request requires a search in another Office, consultations with other Department components or another agency, and/or involves a voluminous amount of

material, your request falls within "unusual circumstances."  See 5 U.S.C. 552 § (a)(6)(B)(i)-(iii) (2018).  Accordingly, we will need to extend the time limit to respond to your request beyond the ten additional days provided by the statute.  For your information, we use multiple tracks to process requests, but within those tracks we work in an agile manner, and the time needed to complete our work on your request will necessarily depend on a variety of factors, including the complexity of our records search, the volume and complexity of any material located, and the order of receipt of your request.  At this time we have assigned your request to the complex track.  In an effort to speed up our process, you may wish to narrow the scope of your request to limit the number of potentially responsive records so that it can be placed in a different processing track.  You can also agree to an alternative time frame for processing, should records be located, or you may wish to await the completion of our records search to discuss either of these options.  Any decision with regard to the application of fees will be made only after we determine whether fees will be implicated for this request.

If you have any questions or wish to discuss reformulation or an alternative time frame for the processing of your request, you may contact the analyst handing your request, Georgianna Gilbeaux, by telephone at the above number or you may write to them at the above address.  You may contact our FOIA Public Liaison, Valeree Villanueva, for any further assistance and to discuss any aspect of your request at: Office of Information Policy, United States Department of Justice, Sixth Floor, 441 G Street, NW, Washington, DC 20530-0001; telephone at 202-514-3642.

Additionally, you may contact the Office of Government Information Services (OGIS) at the National Archives and Records Administration to inquire about the FOIA mediation services they offer.  The contact information for OGIS is as follows:  Office of Government Information Services, National Archives and Records Administration, Room 2510, 8601 Adelphi Road, College Park, MD 20740-6001; e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.

If you are not satisfied with my response to this request for expedited processing, you may administratively appeal by writing to the Director, Office of Information Policy, United States Department of Justice, Sixth Floor, 441 G Street, NW, Washington, DC 20530-0001, or you may submit an appeal through OIP's FOIA STAR portal by creating an account following the instructions on OIP's website: https://www.justice.gov/oip/submit-and-track-request-or-appeal.  Your appeal must be postmarked or electronically submitted within ninety days of the date of my response to your request.  If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal."

Sincerely,

Douglas R. Hibbard
Chief, Initial Request Staff

# EXHIBIT 3



August 31, 2021

**Via Email & OSD/JS PAL -** dcsa.quantico.dcsa-hq.mbx.foia@mail.mil

Freedom of Information Division
1155 Defense Pentagon
Washington, DC 20301-1155

**Freedom of Information Act Request: Evacuations from Afghanistan.**

Dear FOIA Officer:

America First Legal Foundation ("AFL") is a national, nonprofit organization. AFL works to promote the rule of law in the United States, prevent executive overreach, ensure due process and equal protection for all Americans, and promote knowledge and understanding of the law and individual rights guaranteed under the Constitution and laws of the United States.

## I.    Introduction

For months, the Biden Administration assured Americans it had matters well in hand in Afghanistan, and that the terrorists were not about to take over. For example, at President Biden's July 8, 2021, press conference, he said:

Q.  Is a Taliban takeover of Afghanistan now inevitable?

THE PRESIDENT: No, it is not.

Q.  Why?

THE PRESIDENT: Because you — the Afghan troops have 300,000 well-equipped — as well-equipped as any army in the world — and an air force against something like 75,000 Taliban. It is not inevitable.

* * * *

Q.  Mr. President, thank you very much. Your own intelligence community has assessed that the Afghan government will likely collapse.

THE PRESIDENT: That is not true. [1]

These assurances were false.[2]

The Taliban is now in control, and the United States has completely withdrawn its military and diplomatic presence from Afghanistan. The Biden government claims to have evacuated over 120,000 individuals from Afghanistan, but its planning has been inept, its execution chaotic, and its reporting and transparency lacking in detail. It has withheld critical facts, including, among other things, the number of American citizens still in Afghanistan, the nationalities of all those evacuated, the locations of all non-citizens granted admission to the United States, the immigration status—or lack thereof—of all non-citizens, and the process, procedures, and criteria used for vetting and screening evacuees for security and other risks.

AFL's mission includes promoting government transparency and accountability by gathering official information, analyzing it, and disseminating it through reports, press releases, and/or other media, including social media platforms, to educate the public. At the core of this mission is keeping government officials accountable for their duty to faithfully execute the laws and protect and defend the Constitution and laws of the United States and to inform the public as to who the government is allowing entry to the country unscreened. Therefore, under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, AFL hereby requests the following records within twenty business days.

## II.   Definitions

"U.S. Citizen" means a natural born or naturalized citizen of the United States of America.

"INL Air Wing" means Bureau of International Narcotics and Law Enforcement Affairs Office of Aviation, its employees, contractors, vehicles, and aircraft, all as more particularly described at https://www.state.gov/aviation-support/

---

[1] The White House, *Remarks by President Biden on the Drawdown of U.S. Forces in Afghanistan* (July 8, 2021) https://www.whitehouse.gov/briefing-room/speeches-remarks/2021/07/08/remarks-by-president-biden-on-the-drawdown-of-u-s-forces-in-afghanistan/.

[2] The evidence is the Biden Administration knew, or should have known, these assurances were false at the time they were made. *See, e.g.,* Dep't of Defense, *Lead Inspector General, Quarterly Report to the U.S. Congress on Operation Freedom's Sentinel (OFS), April 1, 2021 – June 30, 2021* at 3, 18, 22-25 (Aug. 17, 2021) https://media.defense.gov/2021/Aug/17/2002832926/-1/-1/1/LEAD%20INSPEC-TOR%20GENERAL%20FOR%20OPERATION%20FREEDOM%E2%80%99S%20SENTI-NEL%20I%20QUARTERLY%20REPORT%20TO%20THE%20UNITED%20STATES%20CON-GRESS%20I%20APRIL%201,%202021%20-%20JUNE%2030,%202021.PDF; Joseph Clark, *Biden Administration Ignored Warnings on Afghanistan, Leaked State Dept. Cable Shows*, THE WASHINGTON TIMES (Aug. 21, 2021), https://www.washingtontimes.com/news/2021/aug/20/state-department-cable-shows-biden-administration-/;.

"National Vetting Center" means the Center created pursuant to National Security Presidential Memorandum (NSPM)-9, *Optimizing the Use of Federal Government Information in the Support of the National Vetting Enterprise* and more particularly described at https://www.cbp.gov/border-security/ports-entry/national-vetting-center

"Non-U.S. person" means an alien as defined by 8 U.S.C. § 1101(a)(3).

"Parole authority" means the authority granted under 8 U.S.C. § 1182(d)(5).

"Refugee" has the meaning assigned to it by 8 U.S.C. § 1101(a)(42).

"Special Immigrant Visa" means Special Immigrant Visas for Iraqi and Afghan Translators/Interpreters as defined by Public Law 109-163, and subsequent amendments, and as detailed on the State Department's website at https://travel.state.gov/content/travel/en/us-visas/immigrate/siv-iraqi-afghan-translators-interpreters.html#references.

## III.   Requested Records

A) All records that mention or reference screening or vetting individuals being evacuated from Kabul and/or Afghanistan in the possession of the following custodians:

1) Secretary of Defense Lloyd J. Austin III
2) Deputy Secretary of Defense Kathleen Hicks
3) Assistant to the Secretary of Defense for Public Affairs John Kirby
4) General Mark Milley
5) General Kenneth McKenzie
6) Chief of Staff to the Secretary of Defense Kelly Magsamen
7) General Counsel Caroline D. Krass
8) Under Secretary Dr. Colin H. Kahl
9) Assistant Secretary of Defense (Indo-Pacific Security Affairs) Ely Ratner
10) Melissa Dalton
11) Assistant Secretary of Defense (Special Operations and Low-Intensity Conflict) Christopher Maier
12) Assistant Secretary of Defense (Strategy, Plans, and Capabilities) Dr. Mara Karlin
13) Under Secretary of Defense (Intelligence and Security) Ronald Moultrie
14) Under Secretary of Defense (Personnel and Readiness) Gil Cisneros
15) Assistant Secretary of Defense (Readiness) Shawn Skelly
16) Secretary of the Army Christine Wormuth
17) Secretary of the Navy Carlos Del Toro
18) Secretary of the Air Force Frank Kendall III

3

The timeframe for this request is August 12, 2021, to August 31, 2021.

B) Records sufficient to show the process the Department of Defense used to confirm the identity of each person who boarded a U.S. operated or controlled aircraft leaving Afghanistan between August 10, 2021, and August 31, 2021.

C) For any non-U.S. person evacuated by the United States out of Afghanistan between August 10, 2021, and August 31, 2021, records sufficient to show each person's application status (as a refugee, SIV, or otherwise) on the date that they were evacuated.

D) All records that mention or reference screening, vetting, or processing for individuals seeking evacuation or resettlement out of Kabul, Afghanistan, or KBL. The time frame for this request is July 1, 2021, to the date this records request is processed.

E) For the custodians referenced in request A above, all records that mention or reference the Department of Homeland Security's parole authority and/or paroling Afghans into the United States pursuant thereto. The time frame for this request is August 10, 2021, to August 31, 2021.

F) All records of communications with, or that mention or reference, the National Vetting Center, and (1) contain the words "Kabul", "Afghan", "Bagram", or "KBL" or (2) refer to a person from Afghanistan seeking evacuation from and/or admission to the United States. The time frame for this request is July 1, 2021, to the date this records request is processed.

G) All records that mention or reference coordination with the Department of Homeland Security or the Department of State to screen or vet an individual seeking evacuation from Afghanistan and/or admission into the United States. The time frame for this request is July 1, 2021, to the date the records request is processed.

H) All records that mention or reference (1) U.S. government property, whether military, intelligence-related, or otherwise, left behind or taken by the Taliban, or (2) any person(s) freed by or released to the Taliban. The time frame for this request is July 1, 2021, to the date this records request is processed.

I) For the custodians identified in request A above, all records that mention or reference "Bagram" airbase. The time frame for this request is June 1, 2021, to the date this records request is processed.

J)  Records sufficient to show (1) the number of U.S. Citizens evacuated or other-wise removed from Afghanistan, (2) the number non-U.S. persons evacuated or otherwise removed from Afghanistan and admitted or seeking admission into the United States, and (3) the number of non-U.S. persons identified as posing a potential security risk. The time frame for this request is March 1, 2021, to the date this records request is processed.

K)  Records sufficient to show the number of individuals evacuated from Afghani-stan by nationality. The time frame for this request July 1, 2021, to the date this records request is processed.

## IV.   Redactions

Redactions are disfavored as the FOIA's exemptions are exclusive and must be nar-rowly construed. *Am. Immigration Lawyers Ass 'n v. Exec. Office for Immigration Review (AILA)*, 830 F.3d 667, 676-79 (D.C. Cir. 2016). If a record contains information responsive to a FOIA request, then Department of State must disclose the entire rec-ord; a single record cannot be split into responsive and non-responsive bits. *Id.; see also Parker v. United States DOJ*, 278 F. Supp. 3d 446, 451 (D.D.C. 2017). Conse-quently, Department of State should produce email attachments.

In connection with this request, and to comply with your legal obligations:

- Please search all locations and systems likely to have responsive records, re-gardless of format, medium, or physical characteristics.

- In conducting your search, please construe the term "record" in the broadest possible sense, to include any written, typed, recorded, graphic, printed, or au-dio material of any kind. We seek all records, including electronic records, au-diotapes, videotapes, and photographs, as well as texts, letters, emails, facsim-iles, telephone messages, voice mail messages, and transcripts, notes, or minutes of any meetings, telephone conversations, or discussions.

- Our request includes any attachments to those records or other materials en-closed with a record when transmitted. If an email is responsive to our request, then our request includes all prior messages sent or received in that email chain, as well as any attachments.

- Please search all relevant records or systems containing records regarding agency business. Do not exclude records regarding agency business contained in files, email accounts, or devices in the personal custody of your officials, such as personal email accounts or text messages. Records of official business con-ducted using unofficial systems or stored outside of official files are subject to the Federal Records Act and FOIA. It is not adequate to rely on policies and

procedures that require officials to move such information to official systems within a certain period of time; AFL has a right to records contained in those files even if material has not yet been moved to official systems or if officials have, by intent or through negligence, failed to meet their obligations.

- Please use all tools available to your agency to conduct a complete and efficient search for potentially responsive records. Agencies are subject to governmentwide requirements to manage agency information electronically, and many agencies have adopted the National Archives and Records Administration ("NARA") Capstone program, or similar policies. These systems provide options for searching emails and other electronic records in a manner that is reasonably likely to be more complete than just searching individual custodian files. For example, a custodian may have deleted a responsive email from his or her email program, but your agency's archiving tools may capture that email under Capstone. At the same time, custodian searches are still necessary; you may not have direct access to files stored in .PST files, outside of network drives, in paper format, or in personal email accounts.

- If some portions of the requested records are properly exempt from disclosure, please disclose any reasonably segregable non-exempt portions of the requested records. If a request is denied in whole, please state specifically why it is not reasonable to segregate portions of the record for release.

- Please take appropriate steps to ensure that records responsive to this request are not deleted by the agency before the completion of processing for this request. If records potentially responsive to this request are likely to be located on systems where they are subject to potential deletion, including on a scheduled basis, please take steps to prevent that deletion, including, as appropriate, by instituting a litigation hold on those records.

## V.    Fee Waiver Request

Per 5 U.S.C. § 552(a)(4)(A)(iii) and 32 C.F.R. § 286.12, AFL requests a waiver of all search and duplication fees associated with this request.

First, AFL is a qualified non-commercial public education and news media requester. AFL is a new organization, but it has already demonstrated its commitment to the public disclosure of documents and creation of editorial content through regular substantive analyses posted to its website. For example, its officials routinely appear on national television and use social media platforms to disseminate the information it has obtained about federal government activities. In this case, AFL will make your records and your responses publicly available for the benefit of citizens, scholars, and others. The public's understanding of your policies and practices will be enhanced

through AFL's analysis and publication of the requested records. As a nonprofit organization, AFL does not have a commercial purpose and the release of the information requested is not in AFL's financial interest. Other agencies, including the Departments of Education, Energy, Interior, and Homeland Security, and the Office of the Director of National Intelligence have previously granted AFL a fee waiver.

Second, waiver is proper as disclosure of the requested information is "in the public interest because it is likely to contribute significantly to public understanding of operations or activities of the government." The sudden and abrupt withdraw of forces from a country where the United States has maintained a presence for nearly 20 years, the rapid collapse of the local government to an international terrorist organization in the matter of days, and the Biden Administration's inept response has made this an issue of intense public interest.

## VI.    Request for Expedited Processing

AFL seeks expedited processing of requests A, B, I, and J.

Your regulations provide that you will grant expedited processing requests that demonstrate a "compelling need."[3] You define "compelling need" as existing, *inter alia*, if the information is urgently needed by an individual primarily engaged in disseminating information in order to inform the public concerning actual or alleged Federal government activity."[4] As demonstrated above, both criteria are met here.

First, AFL is an organization primarily engaged in disseminating information to the public. We intend to disseminate the information we receive and our analysis about this request to the public and to other members of the press.

Second, the Biden Administration claims more than 123,000 people, including about 6,000 American citizens, have been evacuated from Afghanistan.[5] However, the evacuation has been chaotic, poorly planned, and badly executed.[6] The Biden Administration turned over Kabul to the Taliban, giving it operational control over access to the

---

[3] 32 C.F.R. § 286.8(e).

[4] *Id.*

[5] *Transcript of Statement of Anthony Blinken on Afghanistan*, THE NEW YORK TIMES (Aug. 30, 2021) https://www.nytimes.com/2021/08/31/us/politics/blinken-afghanistan-speech.html

[6] Molly Hennessy-Fiske, *Americans Faced Taliban, Airport Chaos in Scramble to Evacuate Afghanistan*, LOS ANGELES TIMES (Aug 18, 2021), https://www.latimes.com/world-nation/story/2021-08-18/american-c-struggle-to-leave-afghanistan; Lauren Leatherby, Jim Huylebroek, Scott Reinhard & Sarah KerrAug, *The Dangerous Road to the Kabul Airport*, THE NEW YORK TIMES (Aug. 18, 2021), https://www.nytimes.com/interactive/2021/08/18/world/asia/kabul-airport-afghanistan-maps.html ("While American forces have taken control of Kabul's airport, chaos dominates just outside. As thousands desperately try to flee Afghanistan, Taliban fighters have blocked entrances, fired rifles and beaten some people in the crowds.").

Kabul airport and lists of U.S. Citizens and Afghan human assets.[7] Generally speaking, only individuals the Taliban allowed to leave Afghanistan were able to do so.

Yet the Biden government has not transparently disclosed the vetting and screening process used to ensure evacuees do not pose a security risk. The lack of transparency is problematic first because this Administration has repeatedly disregarded U.S. immigration laws,[8] and second because it has, over a period of months, repeatedly misrepresented the facts on the ground. The Biden credibility gap is wide and deep with respect to Afghanistan, immigration enforcement, and respect for the rule of law. Accordingly, there is an urgent need for immediate disclosure of the measures being taken to verify identities, to vet for terror ties, and to protect American Citizens here at home.[9]

Finally, there is a high likelihood that the information AFL seeks in the above-specified requests will be rendered stale once foreign nationals are granted admission to the United States. Given that the processing of many tens of thousands foreign nationals for admission to the United States is apparently still in process, the requested records are needed urgently to inform the public and policy makers about the processes and criteria this Administration is using to screen and vet potential security risks, and to ensure applicable laws and regulations are being followed.

## VI.    Production

To accelerate release of responsive records, AFL welcomes production on an agreed rolling basis. If possible, please provide responsive records in an electronic format by email. Alternatively, records in native format or in PDF format on a USB drive.

---

[7] Aaron Blake, *The Biden administration's increasingly muddy denials on giving the Taliban lists*, THE WASHINGTON POST (Aug. 30, 2021) https://www.msn.com/en-us/news/us/the-biden-administration-e2-80-99s-increasingly-muddy-denials-on-giving-the-taliban-lists/ar-AANU3cH?ocid=uxbndlbing;   Jerry Dunleavy, *White House: Taliban Setting Up More Entry Points Beyond Perimeter to Stop ISIS-K Attacks,* THE WASHINGTON EXAMINER (Aug. 23, 2021) https://news.yahoo.com/white-house-taliban-setting-more-17060 0073.html; *Taliban Captured Key US Military Biometric Devices: Report*, The Times of India (Aug. 19, 2021), https://timesofindia.indiatimes.com/world/us/taliban-captured-key-us-military-biometric-devices-report/articleshow/85445501.cms.

[8] America First Legal Foundation, *AFL Files FOIAs Demanding Answers about the Biden Administration's Implementation of Catch-and-Release and Other Open Border Policies* (July 27, 2021), https://www.aflegal.org/news/afl-files-foias-demanding-answers-about-the-biden-administrations-implementation-of-catch-and-release-and-other-open-border-policies

[9] According to CNN, "The approach from the administration has been 'get as many people on the plane as you can, and we'll sort out the (immigration visa) stuff later'". Geneva Sands and Evan Perez, *Arriving Afghans Without Paperwork Prompt Delays and Security Challenges*, CNN (Aug. 21, 2021), https://www.cnn.com/2021/08/25/politics/arriving-afghans-paperwork-delays-security/index.html. *Compare* Lizzie Dearden, *Paris Attacks: Some Jihadists 'Took Advantage of Refugee Crisis to Slip into Europe', French Prime Minister Says,* The Independent (Nov. 20, 2015), https://www.independent.co.uk/news/world/europe/paris-attacks-some-jihadists-took-advantage-refugee-crisis-slip-europe-french-prime-minister-says-a6741466.html.

Please send any responsive records being transmitted by mail to America First Legal Foundation, 600 14th Street NW, 5th Floor, Washington, D.C. 20005.

## VII.   Conclusion

If you have any questions about how to construe this request for records or believe further discussions regarding search and processing would facilitate a more efficient production of records of interest to AFL, please do not hesitate to contact me at FOIA@aflegal.org. Finally, if AFL's request for a fee waiver is not granted in full, please contact us immediately upon making that determination.


Thank you,


/s/ Reed D. Rubinstein
Reed D. Rubinstein
America First Legal Foundation



**DEPARTMENT OF DEFENSE**
**FREEDOM OF INFORMATION DIVISION**
**1155 DEFENSE PENTAGON**
**WASHINGTON, DC 20301-1155**

Ref: 21-F-1477
August 31, 2021

Mr. Gene Hamilton
America First Legal
600 14th Street NW
5th Floor
Washington, District of Columbia 20005

Dear Mr. Hamilton:

This is an interim response to your August 31, 2021 Freedom of Information Act (FOIA) request, a copy of which is enclosed for your convenience. We received your request on August 31, 2021, and assigned it FOIA case number 21-F-1477. We ask that you use this number when referring to your request.

Upon review of your request, we are granting expedited processing in accordance with our Department of Defense (DoD) Regulation found at 32 CFR Part 286. Your request has been placed in our expedited processing queue and is currently being worked. We have initiated the necessary search actions with the appropriate components of the Office of the Secretary of Defense (OSD).

For your awareness, please understand that the granting of expedited processing does not provide for a guarantee that your request will be completed by a certain date, as all of our required procedures for searching and reviewing any records located must be followed. In fact, although we have already begun processing your request, we will not be able to respond within the FOIA's 20-day statutory time period as there are unusual circumstances which impact our ability to quickly process your request. The FOIA defines unusual circumstances as (a) the need to search for and collect records from a facility geographically separated from this office; (b) the potential volume of records responsive to your request; and (c) the need for consultation with one or more other agencies or DoD components having a substantial interest in either the determination or the subject matter of the records. At least one, if not more of these scenarios applies or would likely apply to your request. While this office handles FOIA requests for OSD, the Joint Staff (JS) and other component offices, we do not actually hold their records and our office is not geographically located with these organizations. As we do not hold the records, until the required record searches are complete, we are unable to estimate the potential volume of records or the number of consultations that will be required to make a release determination. These circumstances impact the total time required to process your request to completion, so placing your request at the top of the FOIA queue, simply means that the work of processing your request is underway.

If you have requested a fee waiver, please note that decisions to waive or reduce fees are made on a case-by-case basis, and we will make a determination concerning your fee waiver request at the conclusion of the search and assessment of responsive records, should they exist. However, this office will only assess fees if we provide the final response to your FOIA

request within the statutory time allotted by the FOIA or if the responsive records total more than 5,000 pages, even after a good faith effort on our part to limit the scope of your request.

In some instances, we have found that requesters who narrow the scope of their requests experience a reduction in the time needed to process their requests.  If you wish to narrow the scope of your request or have questions about the foregoing, please do not hesitate to contact your Action Officer, Michael Coen, at michael.e.coen2.civ@mail.mil or 571-372-0413.

Please note that this request should be sent to the United States Army, Air force and Navy. These services operates their own FOIA programs and also would have cognizance over the information you have requested.  For your convenience, contact information for these services are provided below:

> U.S. Army Freedom of Information Act Office
> Records Management and Declassification Agency
> 9301 Chapek Rd. Bldg 1458
> Fort Belvoir, VA 22060
>
> Department of the Air Force
> SAF/AAII (FOIA)
> 1000 Air Force Pentagon
> Washington, DC 20330-1000
>
> SECNAV/CNO FOIA Office
> Chief of Naval Operations (DNS-36)
> 2000 Navy Pentagon
> Washington, DC 20350-2000

Additionally, if you have concerns about service received by our office, please contact a member of our Leadership Team at 571-372-0498 or Toll Free at 866-574-4970.

Should you wish to inquire about mediation services, you may contact the OSD/JS FOIA Public Liaison, Tonya R. Fuentes, at 571-372-0462 or by email at OSD.FOIALiaison@mail.mil, or the Office of Government Information Services (OGIS) at the National Archives and Records Administration.  The contact information for OGIS is as follows:

> Office of Government Information Services
> National Archives and Records Administration
> 8601 Adelphi Road-OGIS
> College Park, MD 20740
> E-mail: ogis@nara.gov
> Telephone: 202-741-5770
> Fax: 202-741-5769
> Toll-free: 1-877-684-6448

We regret the delay in responding to your request and appreciate your patience.  As previously stated, please contact the Action Officer assigned to your request, Michael Coen, and reference FOIA case number 21-F-1477, if you have any questions or concerns.

Sincerely,

*Stephen L. Fisher*

*For*   Stephanie L. Carr
Chief

Enclosure:
As stated

# EXHIBIT 4



August 31, 2021

**VIA DHS PAL & ELECTRONIC MAIL – FOIA@HQ.DHS.GOV**

U.S. Department of Homeland Security
Privacy Office, Mail Stop 0655
2707 Martin Luther King Jr. AVE SE
Washington, DC 20528-065

**Freedom of Information Act Request: Evacuations from Afghanistan.**

Dear FOIA Officer:

America First Legal Foundation ("AFL") is a national, nonprofit organization. AFL works to promote the rule of law in the United States, prevent executive overreach, ensure due process and equal protection for all Americans, and promote knowledge and understanding of the law and individual rights guaranteed under the Constitution and laws of the United States.

## I.    Introduction

For months, the Biden Administration assured Americans it had matters well in hand in Afghanistan, and that the terrorists were not about to take over. For example, at President Biden's July 8, 2021, press conference, he said:

> Q.  Is a Taliban takeover of Afghanistan now inevitable?
>
> THE PRESIDENT: No, it is not.
>
> Q.  Why?
>
> THE PRESIDENT: Because you — the Afghan troops have 300,000 well-equipped — as well-equipped as any army in the world — and an air force against something like 75,000 Taliban. It is not inevitable.
>
> * * * *
>
> Q.  Mr. President, thank you very much. Your own intelligence community has assessed that the Afghan government will likely collapse.

THE PRESIDENT: That is not true. [1]

These assurances were false.[2]

The Taliban is now in control, and the United States has completely withdrawn its military and diplomatic presence from Afghanistan. The Biden government claims to have evacuated over 120,000 individuals from Afghanistan, but its planning has been inept, its execution chaotic, and its reporting and transparency lacking in detail. It has withheld critical facts, including, among other things, the number of American citizens still in Afghanistan, the nationalities of all those evacuated, the locations of all non-citizens granted admission to the United States, the immigration status—or lack thereof—of all non-citizens, and the process, procedures, and criteria used for vetting and screening evacuees for security and other risks.

AFL's mission includes promoting government transparency and accountability by gathering official information, analyzing it, and disseminating it through reports, press releases, and/or other media, including social media platforms, to educate the public. At the core of this mission is keeping government officials accountable for their duty to faithfully execute the laws and protect and defend the Constitution and laws of the United States and to inform the public as to who the government is allowing entry to the country unscreened. Therefore, under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, AFL hereby requests the following records within twenty business days.

## II.   Definitions

"U.S. Citizen" means a natural born or naturalized citizen of the United States of America.

"INL Air Wing" means Bureau of International Narcotics and Law Enforcement Affairs Office of Aviation, its employees, contractors, vehicles, and aircraft, all as more particularly described at https://www.state.gov/aviation-support/

---

[1] The White House, *Remarks by President Biden on the Drawdown of U.S. Forces in Afghanistan* (July 8, 2021) https://www.whitehouse.gov/briefing-room/speeches-remarks/2021/07/08/remarks-by-president-biden-on-the-drawdown-of-u-s-forces-in-afghanistan/.

[2] The evidence is the Biden Administration knew, or should have known, these assurances were false at the time they were made. *See, e.g.,* Dep't of Defense, *Lead Inspector General, Quarterly Report to the U.S. Congress on Operation Freedom's Sentinel (OFS), April 1, 2021 – June 30, 2021* at 3, 18, 22-25 (Aug. 17, 2021) https://media.defense.gov/2021/Aug/17/2002832926/-1/-1/1/LEAD%20INSPEC-TOR%20GENERAL%20FOR%20OPERATION%20FREEDOM%E2%80%99S%20SENTI-NEL%20I%20QUARTERLY%20REPORT%20TO%20THE%20UNITED%20STATES%20CON-GRESS%20I%20APRIL%201,%202021%20-%20JUNE%2030,%202021.PDF; Joseph Clark, *Biden Administration Ignored Warnings on Afghanistan, Leaked State Dept. Cable Shows*, THE WASHINGTON TIMES (Aug. 21, 2021), https://www.washingtontimes.com/news/2021/aug/20/state-department-cable-shows-biden-administration-/;.

"National Vetting Center" means the Center created pursuant to National Security Presidential Memorandum (NSPM)-9, *Optimizing the Use of Federal Government Information in the Support of the National Vetting Enterprise* and more particularly described at https://www.cbp.gov/border-security/ports-entry/national-vetting-center

"Non-U.S. person" means an alien as defined by 8 U.S.C. § 1101(a)(3).

"Parole authority" means the authority granted under 8 U.S.C. § 1182(d)(5).

"Refugee" has the meaning assigned to it by 8 U.S.C. § 1101(a)(42).

"Special Immigrant Visa" means Special Immigrant Visas for Iraqi and Afghan Translators/Interpreters as defined by Public Law 109-163, and subsequent amendments, and as detailed on the State Department's website at https://travel.state.gov/content/travel/en/us-visas/immigrate/siv-iraqi-afghan-translators-interpreters.html#references.

## III.  Requested Records

A. All records that mention or reference screening or vetting individuals being evacuated from Kabul and/or Afghanistan in the possession of the following custodians:

1. Secretary Alejandro Mayorkas
2. Deputy Secretary John Tien
3. Karen Olick
4. Any Deputy Chief of Staff to the Secretary
5. Any Counselor or Senior Counselor to the Secretary
6. Kimberly O'Connor
7. Randolph D. "Tex" Alles
8. Shonnie Lyon
9. John D. Cohen
10. Robert Silvers
11. Kelli Ann Burriesci
12. David Shahoulian
13. Samantha Vinograd
14. Serena Hoy
15. Marsha Espinosa
16. Meira Bernstein
17. Heather Fluit
18. Chris Tomney
19. Jennifer Daskal
20. Robert J. Fenton

3

The timeframe for this request is August 12, 2021, to August 31, 2021.

B. All records related to DHS providing any other government partner any information on the identity of any person who boarded a U.S. operated aircraft leaving Afghanistan between August 10, 2021, and August 31, 2021.

C. For any non-U.S. person evacuated by the United States out of Afghanistan between August 10, 2021, and August 31, 2021, records sufficient to show each person's application status (as a refugee, SIV, or otherwise) on the date that they were evacuated.

D. All records that mention or reference screening, vetting, or processing for individuals seeking evacuation or resettlement out of Kabul, Afghanistan, or KBL. The time frame for this request is July 1, 2021, to the date this records request is processed.

E. For the custodians referenced in request A above, all records that mention or reference the Department of Homeland Security's parole authority and/or paroling Afghans into the United States pursuant thereto. The time frame for this request is August 10, 2021, to August 31, 2021.

F. All records of communications with, or that mention or reference, the National Vetting Center, and (1) contain the words "Kabul", "Afghan", "Bagram", or "KBL" or (2) refer to a person from Afghanistan seeking evacuation from and/or admission to the United States. The time frame for this request is July 1, 2021, to the date this records request is processed.

G. All records of communications with, or that mention or reference coordination with the Department of Defense or the Department of State to screen or vet a person from Afghanistan seeking evacuation from Afghanistan and/or admission into the United States. The time frame for this request is July 1, 2021, to the date this records request is processed.

H. Records sufficient to show (1) the number of U.S. Citizens evacuated or otherwise removed from Afghanistan, (2) the number non-U.S. persons evacuated or otherwise removed from Afghanistan and admitted or seeking admission into the United States, and (3) the number of non-U.S. persons identified as posing a potential security risk. The time frame for this request is March 1, 2021, to the date this records request is processed.

I. Records sufficient to show the number of individuals evacuated from Afghanistan by nationality. The time frame for this request July 1, 2021, to the date this records request is processed.

J.  All records in the possession of any custodian identified in request A that mention or refer to—including the development or drafting of—the memo titled "Guidance for the Immigration Processing of Afghan Citizens During Operation Allies Refuge" dated August 23, 2021, sent from Secretary Mayorkas to Acting Commissioner Troy Miller.

## IV.   Redactions

Redactions are disfavored as the FOIA's exemptions are exclusive and must be narrowly construed. *Am. Immigration Lawyers Ass 'n v. Exec. Office for Immigration Review (AILA)*, 830 F.3d 667, 676-79 (D.C. Cir. 2016). If a record contains information responsive to a FOIA request, then Department of State must disclose the entire record; a single record cannot be split into responsive and non-responsive bits. *Id.; see also Parker v. United States DOJ*, 278 F. Supp. 3d 446, 451 (D.D.C. 2017). Consequently, Department of State should produce email attachments.

In connection with this request, and to comply with your legal obligations:

- Please search all locations and systems likely to have responsive records, regardless of format, medium, or physical characteristics.

- In conducting your search, please construe the term "record" in the broadest possible sense, to include any written, typed, recorded, graphic, printed, or audio material of any kind. We seek all records, including electronic records, audiotapes, videotapes, and photographs, as well as texts, letters, emails, facsimiles, telephone messages, voice mail messages, and transcripts, notes, or minutes of any meetings, telephone conversations, or discussions.

- Our request includes any attachments to those records or other materials enclosed with a record when transmitted. If an email is responsive to our request, then our request includes all prior messages sent or received in that email chain, as well as any attachments.

- Please search all relevant records or systems containing records regarding agency business. Do not exclude records regarding agency business contained in files, email accounts, or devices in the personal custody of your officials, such as personal email accounts or text messages. Records of official business conducted using unofficial systems or stored outside of official files are subject to the Federal Records Act and FOIA. It is not adequate to rely on policies and procedures that require officials to move such information to official systems within a certain period of time; AFL has a right to records contained in those files even if material has not yet been moved to official systems or if officials have, by intent or through negligence, failed to meet their obligations.

- Please use all tools available to your agency to conduct a complete and efficient search for potentially responsive records. Agencies are subject to governmentwide requirements to manage agency information electronically, and many agencies have adopted the National Archives and Records Administration ("NARA") Capstone program, or similar policies. These systems provide options for searching emails and other electronic records in a manner that is reasonably likely to be more complete than just searching individual custodian files. For example, a custodian may have deleted a responsive email from his or her email program, but your agency's archiving tools may capture that email under Capstone. At the same time, custodian searches are still necessary; you may not have direct access to files stored in .PST files, outside of network drives, in paper format, or in personal email accounts.

- If some portions of the requested records are properly exempt from disclosure, please disclose any reasonably segregable non-exempt portions of the requested records. If a request is denied in whole, please state specifically why it is not reasonable to segregate portions of the record for release.

- Please take appropriate steps to ensure that records responsive to this request are not deleted by the agency before the completion of processing for this request. If records potentially responsive to this request are likely to be located on systems where they are subject to potential deletion, including on a scheduled basis, please take steps to prevent that deletion, including, as appropriate, by instituting a litigation hold on those records.

## V.    Fee Waiver Request

Per 5 U.S.C. § 552(a)(4)(A)(iii) and 6 C.F.R. § 5.11, AFL requests a waiver of all search and duplication fees associated with this request.

First, AFL is a qualified non-commercial public education and news media requester. AFL is a new organization, but it has already demonstrated its commitment to the public disclosure of documents and creation of editorial content through regular substantive analyses posted to its website. For example, its officials routinely appear on national television and use social media platforms to disseminate the information it has obtained about federal government activities. In this case, AFL will make your records and your responses publicly available for the benefit of citizens, scholars, and others. The public's understanding of your policies and practices will be enhanced through AFL's analysis and publication of the requested records. As a nonprofit organization, AFL does not have a commercial purpose and the release of the information requested is not in AFL's financial interest. Other agencies, including the Departments of Education, Energy, Interior, and Homeland Security, and the Office of the Director of National Intelligence have previously granted AFL a fee waiver.

6

Second, waiver is proper as disclosure of the requested information is "in the public interest because it is likely to contribute significantly to public understanding of operations or activities of the government." The sudden and abrupt withdraw of forces from a country where the United States has maintained a presence for nearly 20 years, the rapid collapse of the local government to an international terrorist organization in the matter of days, and the Biden Administration's inept response has made this an issue of intense public interest.

## VI.   Request for Expedited Processing

AFL seeks expedited processing of requests A, B, E, and J.

Your regulations provide that you will grant expedited processing requests that demonstrate a "compelling need."[3] You define "compelling need" as existing, *inter alia*, if the information is urgently needed by an individual primarily engaged in disseminating information in order to inform the public concerning actual or alleged Federal government activity."[4] As demonstrated above, both criteria are met here.

First, AFL is an organization primarily engaged in disseminating information to the public. We intend to disseminate the information we receive and our analysis about this request to the public and to other members of the press.

Second, the Biden Administration claims more than 123,000 people, including about 6,000 American citizens, have been evacuated from Afghanistan.[5] However, the evacuation has been chaotic, poorly planned, and badly executed.[6] The Biden Administration turned over Kabul to the Taliban, giving it operational control over access to the Kabul airport and lists of U.S. Citizens and Afghan human assets.[7] Generally speaking, only individuals the Taliban allowed to leave Afghanistan were able to do so.

---

[3] 6 C.F.R. § 5.5.

[4] *Id.*

[5] *Transcript of Statement of Anthony Blinken on Afghanistan*, THE NEW YORK TIMES (Aug. 30, 2021) https://www.nytimes.com/2021/08/31/us/politics/blinken-afghanistan-speech.html

[6] Molly Hennessy-Fiske, *Americans Faced Taliban, Airport Chaos in Scramble to Evacuate Afghanistan*, LOS ANGELES TIMES (Aug 18, 2021), https://www.latimes.com/world-nation/story/2021-08-18/american-c-struggle-to-leave-afghanistan; Lauren Leatherby, Jim Huylebroek, Scott Reinhard & Sarah KerrAug, *The Dangerous Road to the Kabul Airport*, THE NEW YORK TIMES (Aug. 18, 2021), https://www.nytimes.com/interactive/2021/08/18/world/asia/kabul-airport-afghanistan-maps.html ("While American forces have taken control of Kabul's airport, chaos dominates just outside. As thousands desperately try to flee Afghanistan, Taliban fighters have blocked entrances, fired rifles and beaten some people in the crowds.").

[7] Aaron Blake, *The Biden administration's increasingly muddy denials on giving the Taliban lists*, THE WASHINGTON POST (Aug. 30, 2021) https://www.msn.com/en-us/news/us/the-biden-administration-e2-80-99s-increasingly-muddy-denials-on-giving-the-taliban-lists/ar-AANU3cH?ocid=uxbndlbing; Jerry Dunleavy, *White House: Taliban Setting Up More Entry Points Beyond Perimeter to Stop*

Yet the Biden government has not transparently disclosed the vetting and screening process used to ensure evacuees do not pose a security risk. The lack of transparency is problematic first because this Administration has repeatedly disregarded U.S. immigration laws,[8] and second because it has, over a period of months, repeatedly misrepresented the facts on the ground. The Biden credibility gap is wide and deep with respect to Afghanistan, immigration enforcement, and respect for the rule of law. Accordingly, there is an urgent need for immediate disclosure of the measures being taken to verify identities, to vet for terror ties, and to protect American Citizens here at home.[9]

Finally, there is a high likelihood that the information AFL seeks in the above-specified requests will be rendered stale once foreign nationals are granted admission to the United States. Given that the processing of many tens of thousands foreign nationals for admission to the United States is apparently still in process, the requested records are needed urgently to inform the public and policy makers about the processes and criteria this Administration is using to screen and vet potential security risks, and to ensure applicable laws and regulations are being followed.

## VI.   Production

To accelerate release of responsive records, AFL welcomes production on an agreed rolling basis. If possible, please provide responsive records in an electronic format by email. Alternatively, records in native format or in PDF format on a USB drive. Please send any responsive records being transmitted by mail to America First Legal Foundation, 600 14th Street NW, 5th Floor, Washington, D.C. 20005.

---

*ISIS-K Attacks,* THE WASHINGTON EXAMINER (Aug. 23, 2021) https://news.yahoo.com/white-house-taliban-setting-more-17060 0073.html; *Taliban Captured Key US Military Biometric Devices: Report*, The Times of India (Aug. 19, 2021), https://timesofindia.indiatimes.com/world/us/taliban-captured-key-us-military-biometric-devices-report/articleshow/85445501.cms.

[8] America First Legal Foundation, *AFL Files FOIAs Demanding Answers about the Biden Administration's Implementation of Catch-and-Release and Other Open Border Policies* (July 27, 2021), https://www.aflegal.org/news/afl-files-foias-demanding-answers-about-the-biden-administrations-implementation-of-catch-and-release-and-other-open-border-policies

[9] According to CNN, "The approach from the administration has been 'get as many people on the plane as you can, and we'll sort out the (immigration visa) stuff later'". Geneva Sands and Evan Perez, *Arriving Afghans Without Paperwork Prompt Delays and Security Challenges*, CNN (Aug. 21, 2021), https://www.cnn.com/2021/08/25/politics/arriving-afghans-paperwork-delays-security/index.html. *Compare* Lizzie Dearden, *Paris Attacks: Some Jihadists 'Took Advantage of Refugee Crisis to Slip into Europe', French Prime Minister Says,* The Independent (Nov. 20, 2015), https://www.independent.co.uk/news/world/europe/paris-attacks-some-jihadists-took-advantage-refugee-crisis-slip-europe-french-prime-minister-says-a6741466.html.

## VII.    Conclusion

If you have any questions about how to construe this request for records or believe further discussions regarding search and processing would facilitate a more efficient production of records of interest to AFL, please do not hesitate to contact me at FOIA@aflegal.org. Finally, if AFL's request for a fee waiver is not granted in full, please contact us immediately upon making that determination.


Thank you,


/s/ Reed D. Rubinstein
Reed D. Rubinstein
America First Legal Foundation



**U.S. Department of Homeland Security**
Washington, D.C. 20528

*Privacy Office, Mail Stop 0655*

September 17, 2021

<u>**SENT VIA E-MAIL TO:  info@aflegal.org**</u>

Reed Rubinstein
600 14th St. NW, 5th Floor
Washington, DC 20005

Re:  **2021-HQFO-01432**

Dear Mr. Rubinstein:

This letter acknowledges receipt of your Freedom of Information Act (FOIA) request to the
Department of Homeland Security (DHS), dated August 31, 2021, and to your request for
expedited handling and a waiver of all assessable FOIA fees.  Our office received your request
on August 31, 2021.  Specifically, you requested:

A. All records that mention or reference screening or vetting individuals being evacuated from
Kabul and/or Afghanistan in the possession of the following custodians:

1. Secretary Alejandro Mayorkas
2. Deputy Secretary John Tien
3. Karen Olick
4. Any Deputy Chief of Staff to the Secretary
5. Any Counselor or Senior Counselor to the Secretary
6. Kimberly O'Connor
7. Randolph D. "Tex" Alles
8. Shonnie Lyon
9. John D. Cohen
10. Robert Silvers
11. Kelli Ann Burriesci
12. David Shahoulian
13. Samantha Vinograd
14. Serena Hoy
15. Marsha Espinosa
16. Meira Bernstein
17. Heather Fluit
18. Chris Tomney
19. Jennifer Daskal
20. Robert J. Fenton

The timeframe for this request is August 12, 2021, to August 31, 2021.

B. All records related to DHS providing any other government partner any information on the identity of any person who boarded a U.S. operated aircraft leaving Afghanistan between August 10, 2021, and August 31, 2021.

C. For any non-U.S. person evacuated by the United States out of Afghanistan between August 10, 2021, and August 31, 2021, records sufficient to show each person's application status (as a refugee, SIV, or otherwise) on the date that they were evacuated.

D. All records that mention or reference screening, vetting, or processing for individuals seeking evacuation or resettlement out of Kabul, Afghanistan, or KBL.

The time frame for this request is July 1, 2021, to the date this records request is processed.

E. For the custodians referenced in request A above, all records that mention or reference the Department of Homeland Security's parole authority and/or paroling Afghans into the United States pursuant thereto. The time frame for this request is August 10, 2021, to August 31, 2021.

F. All records of communications with, or that mention or reference, the National Vetting Center, and (1) contain the words "Kabul", "Afghan", "Bagram", or "KBL" or (2) refer to a person from Afghanistan seeking evacuation from and/or admission to the United States. The time frame for this request is July 1, 2021, to the date this records request is processed.

G. All records of communications with, or that mention or reference coordination with the Department of Defense or the Department of State to screen or vet a person from Afghanistan seeking evacuation from Afghanistan and/or admission into the United States. The time frame for this request is July 1, 2021, to the date this records request is processed.

H. Records sufficient to show (1) the number of U.S. Citizens evacuated or otherwise removed from Afghanistan, (2) the number non-U.S. persons evacuated or otherwise removed from Afghanistan and admitted or seeking admission into the United States, and (3) the number of non-U.S. persons identified as posing a potential security risk. The time frame for this request is March 1, 2021, to the date this records request is processed.

I. Records sufficient to show the number of individuals evacuated from Afghanistan by nationality. The time frame for this request July 1, 2021, to the date this records request is processed.

J. All records in the possession of any custodian identified in request A that mention or refer to— including the development or drafting of—the memo titled "Guidance for the Immigration Processing of Afghan Citizens During Operation Allies Refuge" dated August 23, 2021, sent from Secretary Mayorkas to Acting Commissioner Troy Miller.

Your request for expedited treatment is hereby granted.

Furthermore, due to the subject matter of your request, I am transferring **items B, C, G, H and I** of this request to the FOIA Officer for **U.S. Citizenship & Immigration Services (USCIS)**, for processing under the FOIA and direct response to you.  Please find their contact information below:

**U.S. Citizenship & Immigration Services (USCIS)**
Create an account to avoid delays! FIRST
National Records Center, FOIA/PA Office
P. O. Box 648010
Lee's Summit, MO. 64064-8010
Phone: 1-800-375-5283 (USCIS Contact Center) | Fax: 816-350-5785 | E-mail:
uscis.foia@uscis.dhs.gov
USCIS Website

Due to the increasing number of FOIA requests received by this office, we may encounter some delay in processing your request.  Consistent with 6 C.F.R. Part 5 § 5.5(a) of the DHS FOIA regulations, the Department processes FOIA requests according to their order of receipt. Although DHS' goal is to respond within 20 business days of receipt of your request, FOIA does permit a 10-day extension of this time period in certain circumstances under 6 C.F.R. Part 5 § 5.5(c). As your request seeks documents that will require a thorough and wide-ranging search, DHS will invoke a 10-day extension for your request pursuant to 6 C.F.R. Part 5 § 5.5(c). If you would like to narrow the scope of your request, please contact our office.  We will make every effort to comply with your request in a timely manner.

You have requested a fee waiver.  The DHS FOIA regulations at 6 C.F.R. Part 5 § 5.11(k) set forth six factors DHS must evaluate to determine whether the applicable legal standard for a fee waiver has been met:  (1) Whether the subject of the requested records concerns "the operations or activities of the government," (2) Whether the disclosure is "likely to contribute" to an understanding of government operations or activities, (3) Whether disclosure of the requested information will contribute to the understanding of the public at large, as opposed to the individual understanding of the requester or a narrow segment of interested persons, (4) Whether the contribution to public understanding of government operations or activities will be "significant," (5) Whether the requester has a commercial interest that would be furthered by the requested disclosure, and (6) Whether the magnitude of any identified commercial interest to the requester is sufficiently large in comparison with the public interest in disclosure, that disclosure is primarily in the commercial interest of the requester.

Upon review of the subject matter of your request, and an evaluation of the six factors identified above, DHS has determined that it will conditionally grant your request for a fee waiver.  The fee waiver determination will be based upon a sampling of the responsive documents received from the various DHS program offices as a result of the searches conducted in response to your FOIA request.  DHS will, pursuant to DHS FOIA regulations applicable to media requesters, process the first 100 pages free of charge.  If upon review of these documents, DHS determines that the disclosure of the information contained in those documents does not meet the factors permitting DHS to waive the fees, then DHS will at that time either deny your request for a fee waiver entirely, or will allow for a percentage reduction in the amount of the fees corresponding to the

amount of relevant material found that meets the factors allowing for a fee waiver.  In either case, DHS will promptly notify you of its final decision regarding your request for a fee waiver and provide you with the responsive records as required by applicable law.

In the event that your fee waiver is denied, and you determine that you still want the records, provisions of the FOIA allow us to recover part of the cost of complying with your request.  We shall charge you for records in accordance with the DHS FOIA regulations as they apply to media requesters.  As a media requester you will be charged 10 cents per page for duplication; the first 100 pages are free.  In the event that your fee waiver is denied, we will construe the submission of your request as an agreement to pay up to $25.00.  This office will contact you before accruing any additional fees.

We have queried the appropriate component(s) of DHS for responsive records.  If any responsive records are located, they will be reviewed for determination of releasability.  Please be assured that one of the analysts in our office will respond to your request as expeditiously as possible. We appreciate your patience as we proceed with your request.

Your request has been assigned reference number **2021-HQFO-01432**.  Please refer to this identifier in any future correspondence.  The status of your FOIA request is now available online and can be accessed at: **https://foiarequest.dhs.gov/app/CheckStatus.aspx**, by using this FOIA request number.

If you have any questions, or would like to discuss this matter, please feel free to contact this office at 1-866-431-0486 or 202-343-1743.

Sincerely,

Jimmy Wolfrey
Senior Director, FOIA Operations and Management
(Acting)

# EXHIBIT 5



August 31, 2021

**VIA ELECTRONIC MAIL - <u>FOIARequest@state.gov</u>**

Kellie Robinson, Public Liaison
U. S. Department of State
A/GIS/IPS/PP
2201 C Street N.W., Suite B266
Washington, D. C. 20520-0000

**Freedom of Information Act Request: Evacuations from Afghanistan.**

Dear FOIA Officer:

America First Legal Foundation ("AFL") is a national, nonprofit organization. AFL works to promote the rule of law in the United States, prevent executive overreach, ensure due process and equal protection for all Americans, and promote knowledge and understanding of the law and individual rights guaranteed under the Constitution and laws of the United States.

## I.    Introduction

For months, the Biden Administration assured Americans it had matters well in hand in Afghanistan, and that the terrorists were not about to take over. For example, at President Biden's July 8, 2021, press conference, he said:

> Q.  Is a Taliban takeover of Afghanistan now inevitable?

> THE PRESIDENT: No, it is not.

> Q.  Why?

> THE PRESIDENT: Because you — the Afghan troops have 300,000 well-equipped — as well-equipped as any army in the world — and an air force against something like 75,000 Taliban. It is not inevitable.

> * * * *

> Q.  Mr. President, thank you very much. Your own intelligence community has assessed that the Afghan government will likely collapse.

THE PRESIDENT: That is not true. [1]

These assurances were false.[2]

The Taliban is now in control, and the United States has completely withdrawn its military and diplomatic presence from Afghanistan. The Biden government claims to have evacuated over 120,000 individuals from Afghanistan, but its planning has been inept, its execution chaotic, and its reporting and transparency lacking in detail. It has withheld critical facts, including, among other things, the number of American citizens still in Afghanistan, the nationalities of all those evacuated, the locations of all non-citizens granted admission to the United States, the immigration status—or lack thereof—of all non-citizens, and the process, procedures, and criteria used for vetting and screening evacuees for security and other risks.

AFL's mission includes promoting government transparency and accountability by gathering official information, analyzing it, and disseminating it through reports, press releases, and/or other media, including social media platforms, to educate the public. At the core of this mission is keeping government officials accountable for their duty to faithfully execute the laws and protect and defend the Constitution and laws of the United States and to inform the public as to who the government is allowing entry to the country unscreened. Therefore, under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, AFL hereby requests the following records within twenty business days.

## II. Definitions

"U.S. Citizen" means a natural born or naturalized citizen of the United States of America.

"INL Air Wing" means Bureau of International Narcotics and Law Enforcement Affairs Office of Aviation, its employees, contractors, vehicles, and aircraft, all as more particularly described at https://www.state.gov/aviation-support/

---

[1] The White House, *Remarks by President Biden on the Drawdown of U.S. Forces in Afghanistan* (July 8, 2021) https://www.whitehouse.gov/briefing-room/speeches-remarks/2021/07/08/remarks-by-president-biden-on-the-drawdown-of-u-s-forces-in-afghanistan/.

[2] The evidence is the Biden Administration knew, or should have known, these assurances were false at the time they were made. *See, e.g.,* Dep't of Defense*, Lead Inspector General, Quarterly Report to the U.S. Congress on Operation Freedom's Sentinel (OFS), April 1, 2021 – June 30, 2021* at 3, 18, 22-25 (Aug. 17, 2021) https://media.defense.gov/2021/Aug/17/2002832926/-1/-1/1/LEAD%20INSPECTOR%20GENERAL%20FOR%20OPERATION%20FREEDOM%E2%80%99S%20SENTINEL%20I%20QUARTERLY%20REPORT%20TO%20THE%20UNITED%20STATES%20CONGRESS%20I%20APRIL%201,%202021%20-%20JUNE%2030,%202021.PDF; Joseph Clark, *Biden Administration Ignored Warnings on Afghanistan, Leaked State Dept. Cable Shows*, The Washington Times (Aug. 21, 2021), https://www.washingtontimes.com/news/2021/aug/20/state-department-cable-shows-biden-administration-/;.

"National Vetting Center" means the Center created pursuant to National Security Presidential Memorandum (NSPM)-9, *Optimizing the Use of Federal Government Information in the Support of the National Vetting Enterprise* and more particularly described at https://www.cbp.gov/border-security/ports-entry/national-vetting-center

"Non-U.S. person" means an alien as defined by 8 U.S.C. § 1101(a)(3).

"Parole authority" means the authority granted under 8 U.S.C. § 1182(d)(5).

"Refugee" has the meaning assigned to it by 8 U.S.C. § 1101(a)(42).

"Special Immigrant Visa" means Special Immigrant Visas for Iraqi and Afghan Translators/Interpreters as defined by Public Law 109-163, and subsequent amendments, and as detailed on the State Department's website at https://travel.state.gov/content/travel/en/us-visas/immigrate/siv-iraqi-afghan-translators-interpreters.html#references.

## III.  Requested Records

A. All records that mention or reference screening or vetting individuals being evacuated from Kabul and/or Afghanistan in the possession of the following custodians:

1. Secretary Antony Blinken
2. Deputy Secretary Wendy Sherman
3. Brian P. McKeon
4. Victoria Nuland
5. Derek Chollet
6. Rema Blitter
7. Gentry Smith
8. Suzy George
9. Salman Ahmed
10. Jalina Porter
11. Ned Price
12. Samantha Power
13. Gabriela Chojkier
14. Amy Paro
15. Uzra Zeya
16. Nancy Izzo Jackson
17. Any person employed by, detailed to, or serving as a contractor for the INL Air Wing

The timeframe for this request is August 10, 2021, to August 31, 2021.

B.  Records sufficient to show the process the State Department used to confirm the identity of each person who boarded a U.S. operated or controlled aircraft leaving Afghanistan between August 10, 2021, and August 31, 2021.

C.  For any non-U.S. person evacuated by the United States out of Afghanistan between August 10, 2021, and August 31, 2021, records sufficient to show each person's application status (as a refugee, SIV, or otherwise) on the date that they were evacuated.

D.  All records that mention or reference screening, vetting, or processing for individuals seeking evacuation or resettlement out of Kabul, Afghanistan, or KBL. The time frame for this request is July 1, 2021, to the date this records request is processed.

E.  For the custodians referenced in request A above, all records that mention or reference the Department of Homeland Security's parole authority and/or paroling Afghans into the United States pursuant thereto. The time frame for this request is August 10, 2021, to August 31, 2021.

F.  All records of communications with, or that mention or reference, the National Vetting Center, and (1) contain the words "Kabul", "Afghan", "Bagram", or "KBL" or (2) refer to a person from Afghanistan seeking evacuation from and/or admission to the United States. The time frame for this request is July 1, 2021, to the date this records request is processed.

G.  All records of communications with, or that mention or reference coordination with the Department of Defense, the Department of Homeland Security, or the Department of Justice to screen or vet a person from Afghanistan seeking evacuation from Afghanistan and/or admission into the United States. The time frame for this request is July 1, 2021, to the date this records request is processed.

H.  All records that mention or reference (1) U.S. government property, whether military, intelligence-related, or otherwise, left behind or taken by the Taliban, or (2) any person(s) freed by or released to the Taliban. The time frame for this request is July 1, 2021, to the date this records request is processed.

I.  For the custodians identified in request A above, all records that mention or reference "Bagram" airbase. The time frame for this request is June 1, 2021, to the date this records request is processed.

J.  Records sufficient to show (1) the number of U.S. Citizens evacuated or otherwise removed from Afghanistan, (2) the number non-U.S. persons evacuated or otherwise removed from Afghanistan and admitted or seeking admission

into the United States, and (3) the number of non-U.S. persons identified as posing a potential security risk. The time frame for this request is March 1, 2021, to the date this records request is processed.

K. Records sufficient to show the number of individuals evacuated from Afghanistan by nationality. The time frame for this request July 1, 2021, to the date this records request is processed.

## IV.   Redactions

Redactions are disfavored as the FOIA's exemptions are exclusive and must be narrowly construed. *Am. Immigration Lawyers Ass 'n v. Exec. Office for Immigration Review (AILA)*, 830 F.3d 667, 676-79 (D.C. Cir. 2016). If a record contains information responsive to a FOIA request, then Department of State must disclose the entire record; a single record cannot be split into responsive and non-responsive bits. *Id.; see also Parker v. United States DOJ*, 278 F. Supp. 3d 446, 451 (D.D.C. 2017). Consequently, Department of State should produce email attachments.

In connection with this request, and to comply with your legal obligations:

- Please search all locations and systems likely to have responsive records, regardless of format, medium, or physical characteristics.

- In conducting your search, please construe the term "record" in the broadest possible sense, to include any written, typed, recorded, graphic, printed, or audio material of any kind. We seek all records, including electronic records, audiotapes, videotapes, and photographs, as well as texts, letters, emails, facsimiles, telephone messages, voice mail messages, and transcripts, notes, or minutes of any meetings, telephone conversations, or discussions.

- Our request includes any attachments to those records or other materials enclosed with a record when transmitted. If an email is responsive to our request, then our request includes all prior messages sent or received in that email chain, as well as any attachments.

- Please search all relevant records or systems containing records regarding agency business. Do not exclude records regarding agency business contained in files, email accounts, or devices in the personal custody of your officials, such as personal email accounts or text messages. Records of official business conducted using unofficial systems or stored outside of official files are subject to the Federal Records Act and FOIA. It is not adequate to rely on policies and procedures that require officials to move such information to official systems within a certain period of time; AFL has a right to records contained in those

files even if material has not yet been moved to official systems or if officials have, by intent or through negligence, failed to meet their obligations.

- Please use all tools available to your agency to conduct a complete and efficient search for potentially responsive records. Agencies are subject to government-wide requirements to manage agency information electronically, and many agencies have adopted the National Archives and Records Administration ("NARA") Capstone program, or similar policies. These systems provide options for searching emails and other electronic records in a manner that is reasonably likely to be more complete than just searching individual custodian files. For example, a custodian may have deleted a responsive email from his or her email program, but your agency's archiving tools may capture that email under Capstone. At the same time, custodian searches are still necessary; you may not have direct access to files stored in .PST files, outside of network drives, in paper format, or in personal email accounts.

- If some portions of the requested records are properly exempt from disclosure, please disclose any reasonably segregable non-exempt portions of the requested records. If a request is denied in whole, please state specifically why it is not reasonable to segregate portions of the record for release.

- Please take appropriate steps to ensure that records responsive to this request are not deleted by the agency before the completion of processing for this request. If records potentially responsive to this request are likely to be located on systems where they are subject to potential deletion, including on a scheduled basis, please take steps to prevent that deletion, including, as appropriate, by instituting a litigation hold on those records.

## V.    Fee Waiver Request

Per 5 U.S.C. § 552(a)(4)(A)(iii) and 22 C.F.R. § 171.16, AFL requests a waiver of all search and duplication fees associated with this request.

First, AFL is a qualified non-commercial public education and news media requester. AFL is a new organization, but it has already demonstrated its commitment to the public disclosure of documents and creation of editorial content through regular substantive analyses posted to its website. For example, its officials routinely appear on national television and use social media platforms to disseminate the information it has obtained about federal government activities. In this case, AFL will make your records and your responses publicly available for the benefit of citizens, scholars, and others. The public's understanding of your policies and practices will be enhanced through AFL's analysis and publication of the requested records. As a nonprofit organization, AFL does not have a commercial purpose and the release of the infor-

6

mation requested is not in AFL's financial interest. Other agencies, including the Departments of Education, Energy, Interior, and Homeland Security, and the Office of the Director of National Intelligence have previously granted AFL a fee waiver.

Second, waiver is proper as disclosure of the requested information is "in the public interest because it is likely to contribute significantly to public understanding of operations or activities of the government." The sudden and abrupt withdraw of forces from a country where the United States has maintained a presence for nearly 20 years, the rapid collapse of the local government to an international terrorist organization in the matter of days, and the Biden Administration's inept response has made this an issue of intense public interest.

## VI.    Request for Expedited Processing

AFL seeks expedited processing of requests A, B, J, and K.

Your regulations provide that you will grant expedited processing requests that demonstrate a "compelling need."[3] You define "compelling need" as existing, *inter alia*, if the information is urgently needed by an individual primarily engaged in disseminating information in order to inform the public concerning actual or alleged Federal government activity."[4] As demonstrated above, both criteria are met here.

First, AFL is an organization primarily engaged in disseminating information to the public. We intend to disseminate the information we receive and our analysis about this request to the public and to other members of the press.

Second, the Biden Administration claims more than 123,000 people, including about 6,000 American citizens, have been evacuated from Afghanistan.[5] However, the evacuation has been chaotic, poorly planned, and badly executed.[6] The Biden Administration turned over Kabul to the Taliban, giving it operational control over access to the

---

[3] 22 C.F.R. § 171.11(f).

[4] *Id.*

[5] *Transcript of Statement of Anthony Blinken on Afghanistan*, THE NEW YORK TIMES (Aug. 30, 2021) https://www.nytimes.com/2021/08/31/us/politics/blinken-afghanistan-speech.html

[6] Molly Hennessy-Fiske, *Americans Faced Taliban, Airport Chaos in Scramble to Evacuate Afghanistan*, LOS ANGELES TIMES (Aug 18, 2021), https://www.latimes.com/world-nation/story/2021-08-18/american-c-struggle-to-leave-afghanistan; Lauren Leatherby, Jim Huylebroek, Scott Reinhard & Sarah KerrAug, *The Dangerous Road to the Kabul Airport*, THE NEW YORK TIMES (Aug. 18, 2021), https://www.nytimes.com/interactive/2021/08/18/world/asia/kabul-airport-afghanistan-maps.html ("While American forces have taken control of Kabul's airport, chaos dominates just outside. As thousands desperately try to flee Afghanistan, Taliban fighters have blocked entrances, fired rifles and beaten some people in the crowds.").

Kabul airport and lists of U.S. Citizens and Afghan human assets.[7] Generally speaking, only individuals the Taliban allowed to leave Afghanistan were able to do so.

Yet the Biden government has not transparently disclosed the vetting and screening process used to ensure evacuees do not pose a security risk. The lack of transparency is problematic first because this Administration has repeatedly disregarded U.S. immigration laws,[8] and second because it has, over a period of months, repeatedly misrepresented the facts on the ground. The Biden credibility gap is wide and deep with respect to Afghanistan, immigration enforcement, and respect for the rule of law. Accordingly, there is an urgent need for immediate disclosure of the measures being taken to verify identities, to vet for terror ties, and to protect American Citizens here at home.[9]

Finally, there is a high likelihood that the information AFL seeks in the above-specified requests will be rendered stale once foreign nationals are granted admission to the United States. Given that the processing of many tens of thousands foreign nationals for admission to the United States is apparently still in process, the requested records are needed urgently to inform the public and policy makers about the processes and criteria this Administration is using to screen and vet potential security risks, and to ensure applicable laws and regulations are being followed.

## VI.   Production

To accelerate release of responsive records, AFL welcomes production on an agreed rolling basis. If possible, please provide responsive records in an electronic format by email. Alternatively, records in native format or in PDF format on a USB drive.

---

[7] Aaron Blake, *The Biden administration's increasingly muddy denials on giving the Taliban lists*, THE WASHINGTON POST (Aug. 30, 2021) https://www.msn.com/en-us/news/us/the-biden-administration-e2-80-99s-increasingly-muddy-denials-on-giving-the-taliban-lists/ar-AANU3cH?ocid=uxbndlbing;   Jerry Dunleavy, *White House: Taliban Setting Up More Entry Points Beyond Perimeter to Stop ISIS-K Attacks,* THE WASHINGTON EXAMINER (Aug. 23, 2021) https://news.yahoo.com/white-house-taliban-setting-more-17060 0073.html; *Taliban Captured Key US Military Biometric Devices: Report*, The Times of India (Aug. 19, 2021), https://timesofindia.indiatimes.com/world/us/taliban-captured-key-us-military-biometric-devices-report/articleshow/85445501.cms.

[8] America First Legal Foundation, *AFL Files FOIAs Demanding Answers about the Biden Administration's Implementation of Catch-and-Release and Other Open Border Policies* (July 27, 2021), https://www.aflegal.org/news/afl-files-foias-demanding-answers-about-the-biden-administrations-implementation-of-catch-and-release-and-other-open-border-policies

[9] According to CNN, "The approach from the administration has been 'get as many people on the plane as you can, and we'll sort out the (immigration visa) stuff later'". Geneva Sands and Evan Perez, *Arriving Afghans Without Paperwork Prompt Delays and Security Challenges*, CNN (Aug. 21, 2021), https://www.cnn.com/2021/08/25/politics/arriving-afghans-paperwork-delays-security/index.html. *Compare* Lizzie Dearden, *Paris Attacks: Some Jihadists 'Took Advantage of Refugee Crisis to Slip into Europe', French Prime Minister Says,* The Independent (Nov. 20, 2015), https://www.independent.co.uk/news/world/europe/paris-attacks-some-jihadists-took-advantage-refugee-crisis-slip-europe-french-prime-minister-says-a6741466.html.

Please send any responsive records being transmitted by mail to America First Legal Foundation, 600 14th Street NW, 5th Floor, Washington, D.C. 20005.

**VII.    Conclusion**

If you have any questions about how to construe this request for records or believe further discussions regarding search and processing would facilitate a more efficient production of records of interest to AFL, please do not hesitate to contact me at FOIA@aflegal.org. Finally, if AFL's request for a fee waiver is not granted in full, please contact us immediately upon making that determination.


Thank you,


/s/ Reed D. Rubinstein
Reed D. Rubinstein
America First Legal Foundation



**United States Department of State**

*Washington, D.C.   20520*

October 14, 2021

FOIA Case No. F-2021-09922

Reed D. Rubinstein
America First Legal Foundation
600 14th Street NW, 5th Floor
Washington DC,  20005

Email: FOIA@aflegal.org

Dear Mr. Rubinstein:

This is in response to your Freedom of Information Act (FOIA) request, dated
August 31, 2021, for records pertaining to vetting of Afghan nationals by the Biden
Administration.  Specifically, this letter addresses your appeal dated October 6, 2021, requesting
expedited processing of sections A, B, J, and K of your request.

I understand the Department has granted your request for expedited processing.  Therefore, your
appeal has been overcome by events and there is nothing to appeal.

For further communications with this office, please contact FOIAStatus@state.gov and include
the case number F-2021-09922.

Sincerely,


/s/
Lori Hartmann
Appeals Officer
Office of Information Programs
    and Services