UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

AMERICA FIRST LEGAL
FOUNDATION,

    *Plaintiff*,

v.

ANTHONY COLEY, et al.,

    *Defendants.*

_____/

Case No. 1:21-cv-03024 (TSC)

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO DISMISS

### INTRODUCTION

America First Legal Foundation ("AFL") has sued the Department of Justice ("DOJ") for failing to grant expedited processing of three Freedom of Information Act requests about the federal government's vetting (or lack thereof) of persons flown out of Afghanistan during the United States' retreat, the State of Georgia's election law, and the Attorney General's October 4, 2021 Memorandum targeting school parents for federal law enforcement action. In each case, DOJ denied expedited process using boilerplate language and without addressing AFL's justifications, then affirmed the denials on appeal in broad conclusory terms, again without addressing AFL's detailed justification statements. *See* ECF No. 1 ("Compl.") ¶¶ 4-6; *see also* ECF No. 1-2; ECF No. 1-5; ECF No. 1-8. AFL sued DOJ alleging both that the denials were unlawful and that "Defendants have engaged in an unlawful policy or practice of violating the

FOIA to keep AFL from obtaining and publicly disclosing politically derogatory information about the Biden Administration, its appointees, and its allies." Compl. ¶ 11; *see id.* ¶¶ 48-52.

Defendants move to dismiss AFL's policy-and-practice claim for relief, arguing that AFL's FOIA requests are "too few" and "too diverse" to establish this claim. ECF No. 6-1 ("Memo."), at 1. But a policy or practice does not require dozens of unlawful denials, and common features unite these requests. Each was submitted by AFL and they "seek records likely to cast the Biden Administration in a negative light on matters of intense public concern, media interest, and political consequence." Compl. ¶ 49. According to DOJ, "AFL does not allege that DOJ denied expedited processing to every FOIA request AFL has filed." Memo. 7. But the complaint alleges that "[s]ince the Biden Administration took office, Defendants have not fulfilled any FOIA requests from AFL." Compl. ¶ 10. And DOJ has denied expedited processing even when the Departments of Defense, Homeland Security, and State granted it for substantively identical requests. *Id.* ¶ 7. AFL's complaint plausibly alleges both that its requests meet the statutory and regulatory requirements for expedited processing and that Defendants' denial is part of an unlawful policy or practice. Defendants' motion to dismiss in part should be denied.

## FACTS

AFL is a national, nonprofit organization committed to protecting constitutional rights through, *inter alia*, robust oversight of the Executive Branch using the FOIA. *See* Compl. ¶¶ 1, 17, 45; ECF No. 1-1, at 1, 6; ECF No. 1-3, at 1, 9;

ECF No. 1-6, at 1, 10; America First Legal, Oversight, https://www.aflegal.org/oversight. AFL's core mission includes informing and educating the public regarding the operations and activities of the federal government, and it intends to give the public access to the records it obtains via the FOIA on its website and to disseminate the requested records by making them broadly available to the public, scholars, and the media; and to use its editorial skills to turn raw materials into distinct work and distribute that work to an audience. Compl. ¶ 45; ECF No. 1-1, at 1, 14; ECF No. 1-3, at 1, 17; ECF No. 1-6, at 1, 4-5, 13.

AFL's email list includes over 65,000 unique addresses,[1] its Twitter page has nearly 10,000 followers, the Twitter page of its Founder and President has over 83,800 followers, and it has another 18,000 followers on the GETTR social media platform. Compl. ¶ 45. Although AFL is a new organization, the U.S. Departments of State, Homeland Security, and Defense, and the United States Centers for Disease Control and Prevention, have granted AFL expedited processing. *Id.*; ECF No. 1-3, at 21-57; ECF No. 1-6, at 70.

Three specific FOIA requests are at issue: vetting of Afghan nationals, Georgia's election law, and DOJ's targeting of parents exercising First Amendment rights at school board meetings. Each time, AFL justified expedited processing at length in the original request; Defendants denied it in boilerplate language without addressing AFL's justifications; AFL appealed, providing additional legal and factual

---

[1] As noted in the Complaint, later, for cybersecurity reasons, AFL reviewed and scrubbed its email list. AFL's email list contains about 25,000 valid unique addresses. Compl. ¶ 45(d).

3

bases for expedited processing; and, Defendants denied the appeals in broad, conclusory terms that again failed to address AFL's justifications—even while other federal agencies granted substantively identical requests.

### A. Afghanistan: FOIA-2021-02103

On August 31, 2021, AFL submitted request number FOIA-2021-02103 seeking expedited processing of two items: 1) Records related to screening or vetting of evacuees held by six specified custodians, and 2) records related to DOJ's communications with other government partners related to the identity of people who boarded a U.S. operated aircraft leaving Afghanistan between August 10, 2021, and August 31, 2021. ECF No. 1-1, at 14. DOJ denied expedition on September 10, 2021, stating that the "Office cannot identify a particular urgency to inform the public about" the subject of the request, and there was no reason to believe lack of expedited processing poses a threat to life or safety. *Id.* at 18.

AFL appealed this decision on the merits, explaining why AFL's request met the standard for expedition under the FOIA, D.C. Circuit precedent, and DOJ's own FOIA regulations. *Id.* at 4-7. AFL also advised DOJ that the Departments of State, Defense, and Homeland Security had granted expedited processing of nearly identical requests. Compl. ¶ 7; *see* ECF No. 1-1, at 3, 21-57.

On November 1, 2021, DOJ denied AFL's appeal. Compl. ¶ 23, ECF No. 1-2. Without explanation, DOJ declared that AFL had not established the Biden Administration's Afghan retreat and the vetting of Afghans admitted to the United States are matters of "current exigency" to the American public and had not shown

that delaying a response would compromise a significant recognized interest. *Id.* at 2. Citing *Landmark Legal Found. v. EPA*, 910 F. Supp. 2d 270 (D.D.C. 2012) and *ACLU of N. Cal. v. DOJ*, No. 04-4447, 2005 WL 588354, at *14 (N.D. Cal. Mar. 11, 2005), DOJ further declared that AFL had not demonstrated that it is "'primarily engaged' in disseminating information as a matter of law. ECF No. 1-2, at 2. But DOJ did not acknowledge, address, or distinguish the more recent cases (and the DOJ's litigating position) that AFL cited establishing that it does. *See* ECF No. 1-1, at 1, 14; *see, e.g.*, *Protect Democracy Project, Inc. v. Dep't of Justice*, 498 F. Supp. 3d 132, 139 (D.D.C. 2020) ("[P]ublishing information need not be the organization's sole occupation." (cleaned up)); *Protect Democracy Project, Inc. v. Dep't of Defense*, 263 F. Supp. 3d 293, 298 (D.D.C. 2017) (similar); *Brennan Ctr. for Just. at NYU Sch. of L. v. Dep't of Commerce*, 498 F. Supp. 3d 87, 98 (D.D.C. 2020) (holding that "a non-partisan law and public policy" qualified "as an organization 'primarily engaged in disseminating information'").

Additionally, and for the first time in the context of this request and appeal, the DOJ cited a determination by Defendant Coley, a political appointee, that AFL "failed to sufficiently demonstrate that subject of your request is '[a] matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence.'" ECF No. 1-2.

B.   **The Voting Section: 21-00291-F**

The State of Georgia's election integrity measures have generated exceptional media, political, and public attention. *See* ECF No. 1-3, at 5. On June 11, 2021,

5

Attorney General Garland announced plans to "double" the Voting Section's head count on or before July 21, 2021. *Id.* at 10. Two weeks later, DOJ sued the State of Georgia. DOJ Office of Public Affairs, Justice Department Files Lawsuit Against the State of Georgia to Stop Racially Discriminatory Provisions of New Voting Law (June 25, 2021), https://www.justice.gov/opa/pr/justice-department-files-lawsuit-against-state-georgia-stop-racially-discriminatory.

On August 31, 2021, AFL filed Request 21-00291-F, and requested expedited processing, to obtain records related to these actions—in part because of longstanding concerns about the possibility of an inappropriate partisan taint in the Voting Section's activities and hiring. Compl. ¶ 24, ECF No. 1-3, at 9-18. On September 10, 2021, the Civil Rights Division's FOIA/PA Branch denied AFL's FOIA request on two grounds. First it asserted that "Items H, I and J regarding the Attorney General's June 11, 2021, policy address are not proper FOIA requests." *Id.* at 24. Second, the Civil Rights Division denied AFL's request for expedited processing because, it stated, AFL had "not demonstrated that your request meets the criteria necessary for expedited processing" and "[w]e have a limited number of staff dedicated to responding to FOIA requests and cannot always allow new requests to take precedence over the hundreds of previously submitted requests." *Id.*

AFL appealed on October 6, 2021, arguing that its requests were proper and it was entitled to expedition under the "compelling need" standard, the statutory test, and D.C. Circuit precedent. Compl. ¶ 26, ECF No. 1-3, at 2-7. AFL also objected because Civil Rights Division failed to explain why AFL failed to meet the applicable

6

criteria. *Id.* This appeal was assigned tracking number A-2022-00012 and denied, without reasoning, by email on October 27, 2021. Compl. ¶¶ 27-28, ECF No. 1-4, at 1-5.

### C.  The October 4 Memorandum: FOIA-2022-00056 *et al.*

Request number FOIA-2022-00056 *et al.* concern the Attorney General's Memorandum of October 4, 2021, targeting protesting parents. The Memorandum directs all ninety-three U.S. Attorneys, the FBI, the Criminal Division, Civil Rights Division, and other components to address alleged threats, harassment, and violence by parents at school board meetings. ECF No. 1-6, at 12. The Attorney General's Memorandum came just four days after the National School Boards Association had sent a letter to the President asking for precisely what the Attorney General did. *Id.*

The order of events, the proximity in timing, and the substance of the Attorney General's Memorandum caused deep concern for many, including AFL. *See, e.g.*, Chuck Ross, *Cardona Requested School Board Letter That Called Parents 'Domestic Terrorists*, The Washington Free Beacon (Jan. 11, 2022), https://freebeacon.com/biden-administration/cardona-requested-school-board-letter-that-called-parents-domestic-terrorists/. Thus, on October 7, 2021, AFL requested records from the Office of Information Policy (OIP) (covering custodians within the Office of the Attorney General, the Office of the Deputy Attorney General, the Office of the Associate Attorney General, the White House Liaison, and the Office of Public Affairs), the Office of Legal Counsel (OLC), the Criminal Division, the Civil Rights Division, the

7

Executive Office of U.S. Attorneys (EOUSA), and the FBI. Compl. ¶¶ 29-43; ECF No. 1-6, at 10. AFL requested expedited processing from each component. *Id.* at 11-19.

OIP denied AFL's request for expedited processing, asserting that AFL's primary purpose was not disseminating information, that there was no threat or loss of due process rights, and that the Director of the Office of Public Affairs had decided this was not a matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity that affect public confidence. ECF No. 1-6, at 1, 21-23. OLC denied AFL's request on identical grounds. *Id.* at 25-27. The Criminal Division denied expedited processing, essentially on the same grounds but without explanation, stating simply that AFL's request did not "fit[] within any of the four Department of Justice standards for expedited treatment." *Id.* at 29. The EOUSA denied AFL's FOIA request entirely, asserting AFL did not reasonably describe the requested records and that a search would be unduly burdensome. *Id.* at 32. The Civil Rights Division did not adjudicate AFL's fee waiver or expedited processing requests. *Id.* at 35. FBI did not respond.

AFL appealed the denials by a single letter filed October 19, 2021. Compl. ¶ 38; ECF No. 1-6. These appeals were broken out by component, and all were denied in summary fashion by October 29, 2021. Compl. ¶¶ 39-43; ECF Nos. 1-7 through 1-16.

### D. Subsequent Events

On October 13, 2021, AFL submitted request FOIA-2022-00083. This request, which is not now part of this case, concerned the Attorney General's potential conflict of interest issues from his son-in-law's financial interest in the Attorney General's

8

October 4 Memorandum. *See* <u>Exhibit 1</u>. On October 22, 2021, DOJ denied expedited processing on the grounds that AFL does not primarily disseminate information. *See* <u>Exhibit 2</u>. It left open the issue of the public interest question. *Id.*

On November 15, 2021, AFL filed this action. According to Defendants' motion, one day later, "DOJ's Public Affairs Office determined that all FOIA requests related to the October 4, 2021, memorandum were to be granted expedition pursuant to § 16.5(d)(1)(iv) [sic]. As a result, [AFL's] FOIA request will receive expedited handling." Memo. 4 n.1. This footnote in Defendants' motion is the first and only indication AFL has received that DOJ had reversed itself as to the October 4 Memorandum FOIA request, and AFL has received no other such communications, much less results. Thus, when this action was filed and to this day, "[s]ince the Biden Administration took office, Defendants have not fulfilled any FOIA requests from AFL." Compl. ¶ 10.

A couple of weeks after this lawsuit was filed, on November 30, 2021, Defendant Coley determined that AFL's new FOIA request (FOIA-2022-00083) involved a matter of public interest and granted AFL expedition. *See* <u>Exhibit 3</u>.

## LEGAL STANDARD

Under Fed. R. Civ. P. 12(b)(6), Defendants have moved to dismiss AFL's second claim for relief, which alleges a policy or practice violation of the FOIA. Fed. R. Civ. P. 8(a)(2) provides that a complaint must provide a short and plain statement of the claim showing that the pleader is plausibly entitled to relief. Accordingly, AFL "need not set forth the elements of a prima facie case," *Sparrow v. United Air Lines, Inc.*,

216 F.3d 1111, 1113 (D.C. Cir. 2000), and its complaint "does not need detailed factual allegations." *Bell A. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Instead, AFL need only plead "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up).

A claim should not be dismissed under Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Sparrow*, 216 F.3d at 1114 (cleaned up); *see Iqbal*, 556 U.S. at 678. Along with the allegations made within the four corners of the complaint, the court may also consider "any documents either attached to or incorporated in the complaint" and matters of which it may take judicial notice. *Equal Emp't Opportunity Comm'n v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997). And AFL is entitled to the benefit of all inferences that can be derived from the facts alleged. *See Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994); *Francis v. Internal Revenue Serv.*, 2020 WL 3129030, at *5 (D.D.C. June 12, 2020).

Judicial review should be faithful to the statutory text and purpose and harmonize and give full effect to all relevant provisions. *See Bostock v. Clayton Cnty., Georgia*, 140 S. Ct. 1731, 1738 (2020); *Nat'l Ass'n of Home Builders v. Defs. Of Wildlife*, 551 U.S. 644, 666 (2007); *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132 (2000). The FOIA is the critical means by which citizens may learn "what their Government is up to," "a structural necessity in a real democracy," and it should be construed in a manner promoting government transparency. *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 171-72 (2004); *see, e.g.*, *NLRB v. Robbins*

*Tire & Rubber Co.*, 437 U.S. 214, 242 (1978); *Quick v. Dep't of Commerce*, 775 F. Supp. 2d 174, 179-80 (D.D.C. 2011). Congress included nine exemptions permitting agencies to withhold information from FOIA disclosure. 5 U.S.C. § 552(b). These exemptions are explicitly made exclusive and must be "narrowly construed." *Milner v. Dep't of the Navy*, 562 U.S. 562, 565 (2011).

Apart from claims seeking relief for specific FOIA requests, requesting parties may also assert a claim that an agency "policy or practice" "will impair the party's lawful access to information." *Judicial Watch, Inc. v. Dep't of Homeland Security,* 895 F.3d 770, 777 (D.C. Cir. 2018); *see also CREW v. Dep't of Hous. & Urb. Dev.*, 415 F. Supp. 3d 215, 224 (D.D.C. 2019); *Payne Enters., Inc. v. United States*, 837 F.2d 486, 491 (D.C. Cir. 1988); *Nat'l Sec. Counselors v. Cent. Intelligence Agency*, 960 F. Supp. 2d 101, 132 (D.D.C. 2013).

District courts have reached a consensus on several points about these claims—a consensus that undermines the government's uncited assertion here that "the threshold for pleading a 'policy or practice' claim" is "high." Memo. 6 (capitalization omitted). First, "a plaintiff need not point to a regulation that establishes the policy or practice, and the agency need not concede the policy's existence." *CREW*, 415 F. Supp. 3d at 224 (cleaned up). Second, "the alleged policy may be informal and need not have been published or written anywhere." *Id.* Third, "a plaintiff cannot state a valid claim arising out of a single incident—there must be a pattern—but a single plaintiff does not need extrinsic evidence." *Id.* Finally, "the

plaintiff must allege agency conduct consistent with the alleged illegal policy or practice." *Id.* at 225.

## ARGUMENT

Defendants argue that "AFL has not pled 'factual content that allows the court to draw the reasonable inference that' DOJ has a policy or practice of denying expedited processing to AFL because it wishes to protect the Biden Administration." Memo. 14. First, citing *ACLJ v. FBI*, 470 F. Supp. 3d 1, 7 (D.D.C. 2020), Defendants claim that three denied requests are not enough. Memo. 12. Second, Defendants claim the three requests are "not sufficiently similar" to conclude that there is a common policy or practice. *Id.* Third, Defendants argue the complaint contains "nothing…that would push AFL's assertion that DOJ is 'stonewalling the release of politically derogatory and harmful information about the Biden Administration' beyond rank speculation." Memo. 13. None of these arguments, however, justifies dismissal. *See CREW,* 415 F. Supp. 3d at 225-26.

First, *ACLJ*, cited for the proposition that three is not enough, does not so hold. There, the requestors' grievances stemmed from repeated delays by the government in addressing their FOIA requests. *ACLJ,* 470 F. Supp. 3d at 6-8. The court examined the record and explained that the complaint did not sufficiently allege facts to make it plausible that those three specific delays were a part of a policy or practice instead of isolated, or at least uncoordinated, shortcomings on the government's part. *Id.* Here, by contrast, AFL has alleged and explained the similarities across the three denials and how they are connected to each other. *See* Compl. ¶¶ 1-13, 45-52. Though

12

the government argues that "AFL does not allege that DOJ denied expedited processing to every FOIA request AFL has filed," Memo. 7, the complaint alleges that "[s]ince the Biden Administration took office, Defendants have not fulfilled any FOIA requests from AFL." Compl. ¶ 10.[2]

The defendants also cite *Judicial Watch, Inc. v. Dep't of Homeland Security*, 895 F.3d 770 (D.C. Circ. 2018). Memo. 11. But *Judicial Watch* does not deal with the improper invocation of exemptions; it is about the promptness with which agencies address FOIA requests. *Judicial Watch*, 895 F.3d at 779. It also does not set a certain number of requests as a bar to a policy or practice claim as a matter of law. In fact, no court has ever held that more than three requests is required to successfully plead a policy and practice claim.[3] And, as the court in *ACLJ* noted, *Judicial Watch* expands the policy or practice standard set in *Payne*. 470 F. Supp. 3d at 5. Far from representing a limitation or a threshold, *Judicial Watch* represents the application of the policy or practice claim to a new set of facts.

Next, the notion that a policy or practice claim *must* be based on a single subject or single type of request is not supportable. The D.C. Circuit "has never articulated a 'single subject' or 'single type of request' requirement for a policy-or-practice claim." *ACLJ,* 470 F. Supp. 3d at 6. Rather, the similarity of the underlying

---

[2] If there is any question "about the exact nature of the pattern or policy at issue," leave to amend or dismissal without prejudice would be warranted. *ACLJ*, 470 F. Supp. 3d at 8.

[3] "Once is happenstance, twice is coincidence, the third time it's enemy action." Ian Fleming, Goldfinger (Thomas Mercer, 2012).

13

requests is one factor courts consider, as it suggests the agency's behavior stems from a considered decision rather than isolated mistakes. *See id.* at 6-7.

Here, the core of AFL's complaint is precisely that DOJ's behavior stems from a considered decision to prevent the disclosure of "records likely to cast the Biden Administration in a negative light on matters of intense public concern, media interest, and political consequence." Compl. ¶ 49. Defendants repeatedly denied AFL expedited processing using boilerplate language and failed to address AFL's justifications. *Id.* ¶ 50. Then, they affirmed the denials on appeal in broad conclusory terms that failed to address AFL's subsequent detailed justification statements. *Id.* ¶ 51. And, given the high-profile composition of AFL's board and staff, the matters on which the requests touched, and that Defendant Coley specifically made the decision as a political appointee to deny expedited processing, AFL has pled a facially plausible claim. *Cf. CREW,* 415 F. Supp. 3d at 225 (denying summary judgment to the government where CREW had pled that the "disclosure of the requested documents is likely to cast the agency or HUD Secretary Ben Carson in a negative light.").

Defendants' third argument—that AFL's allegations do not go beyond "rank speculation" (Memo. 9)—is ultimately rooted in an admission that DOJ has never adequately explained its denial of expedited processing for AFL. In each request, AFL articulated multiple ways in which it met the statutory, regulatory, and judicial tests for expedited processing, with abundant citations. Defendants have not articulated a factual or legal basis for their justifications, other than that a political appointee

14

disagrees. Right after this lawsuit was filed, Defendants abruptly altered course, again without explanation. *See supra* p. 9. Based on the summary nature of the denials, Defendants' failure to address AFL's arguments on appeal, and even their unexplained reversal after being sued, AFL (and this Court) *cannot* know precisely *why* expedited processing was denied in any given case. But AFL has alleged enough facts to make a policy-or-practice claim plausible. *Cf. CREW*, 415 F. Supp. 3d at 224 ("[A] plaintiff need not point to a regulation that establishes the policy or practice." (cleaned up)); *Muttitt v. U.S. Cent. Command*, 813 F. Supp. 2d 221, 231 (D.D.C. 2011) ("[A] formal policy or regulation is not required to sustain a claim for relief enjoining a pattern or practice of violating FOIA.").

Defendants argue that they are not bound by the processing decisions of other agencies and that the disparate outcomes between agencies suggests "that something other than political considerations motivated the [defendants'] decisions" to deny expedited processing. Memo. 13. But *Defendants* processed AFL's requests quite consistently, denying each of AFL's requests for expedited processing (at least until this lawsuit).

As then-Judge Garland held some twenty years ago, the FOIA applies government-wide:

> Were district courts required to defer to agency determinations of "compelling need," they would have to affirm disparate (albeit, reasonable) decisions reached by different agencies regarding the same request. As the government agreed at oral argument, however, Congress did not contemplate such a result. Indeed, it is precisely because FOIA's terms apply government-wide that we generally decline to accord deference to agency interpretations.

15

*Al-Fayed v. CIA,* 254 F.3d 300, 306-07 (D.C. Cir. 2001). If Defendant Coley is treating AFL's requests differently than the Departments of Homeland Security or Defense and not explaining the reasons, then it is fair to assume that political motivations are at least a plausible explanation for his determinations. Similarly, DOJ's abrupt reversal shortly after AFL filed this policy-or-practice lawsuit, and its decision to grant expedited processing with respect to AFL's request seeking more information relating to the Attorney General's potential conflicts of interest on the October 4 Memorandum, plausibly suggest that AFL's expedited processing requests were purposefully denied by the Biden Administration. *See supra* p. 9. Deposition testimony from Defendant Coley explaining the processing decisions would prove illuminating and, given DOJ's failure to articulate the reasons for denying expedited processing, the only way for AFL, the Court, and the public to learn why the Defendants chose to act as they did.

## CONCLUSION

In *CREW,* the court denied the government's motion to dismiss by holding that the plaintiff had properly pled a policy or practice claim based on allegations in the complaint and its attached documents showing denials "shortly after receiving the requests, using boilerplate language and failing to address the requesters' justifications, and then affirmances of the denials on appeal in broad conclusory terms that [failed] to address the requesters' subsequent detailed justification statements." 415 F. Supp. 3d at 225. So too here. Given the facts above, and the

reasonable inferences drawn from them, AFL has alleged a policy or practice claim that is facially plausible. As in *CREW*, the government's motion should be denied.

Respectfully submitted,

/s Christopher Mills
Christopher E. Mills
D.C. Bar No. 1021558
SPERO LAW LLC
557 East Bay St. #22251
Charleston, SC 29413
(843) 606-0640
cmills@spero.law

/s/ Reed D. Rubinstein
Reed D. Rubinstein
D.C. Bar No. 400153
AMERICA FIRST LEGAL FOUNDATION
600 14th Street, N.W.
Fifth Floor
Washington, D.C. 20005
(202) 964-3721
reed.rubinstein@aflegal.org

*Counsel for Plaintiff America First Legal Foundation*

January 12, 2022